**WAYLAND HEALTH CENTER**

v.

**Nora LOWE.**

**No. 81–423-Appeal.**

Supreme Court of Rhode Island.

May 11, 1984.

James T. McCormick, Bruce G. Tucker, Roberts, Carroll, Feldstein & Tucker, Providence, for plaintiff.

Raul L. Lovett, Lovett & Morgera, Ltd., Providence, Lauren E. Jones, Providence, on brief, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal from a decree of the Workers' Compensation Commission denying relief to the employee. The employee, Nora Lowe, was employed as a nurse's aide by the employer, Wayland Health Center. Her duties involved attending to the needs of various patients. Both before and after attending to each patient, the employee was required to wash her hands with a special cleanser.

In March of 1979 employee's hands developed blisters and a rash that later spread to both of her feet. By June 1979 the condition of her hands had deteriorated to the point that performance of her duties was no longer possible. On June 27, 1979, she filed a petition for Workers' Compensation benefits, which petition was granted on January 24, 1980. The trial commissioner found that this skin condition was contact dermatitis and dyshidrotic exzema that arose out of and in the course of her employment. The trial commissioner also found that employee was partially incapacitated from June 4, 1979, to October 11, 1979, totally incapacitated from October 12, 1979, to October 19, 1979, and partially incapacitated from October 20, 1979, onward. He found her average weekly wage to be $91.17 and ordered employer to make disability payments accordingly.

On March 5, 1980, employer filed a petition to review this decree. The employer alleged that employee was capable of employment in another occupation that would be neither unhealthy for nor injurious to her. The employer requested that its compensation payments to employee be reduced to a percentage of full compensation proportionate to the reduction in her earning capacity, if any, pursuant to G.L.1956 (1979 Reenactment) § 28–34–3.

At the hearing on the petition, three witnesses testified. The employee testified that she was forty-eight years old, that she had a ninth-grade education, and that aside from her skin condition, she was in good health. She also testified that prior to her employment as a nurse's aide, she had worked for thirteen years as a foot-press operator in the jewelry industry, during which time she never experienced any problem with her hands.

John Pompei, supervisor of Rhode Island Vocational Rehabilitative Services, was qualified as an expert in job placement for people with physical or emotional problems. He testified that in his position, he has access to job listings of employers willing to hire individuals with some disability. Mr. Pompei testified that, based upon a hypothetical, that included her employment qualifications and her skin disease, she could still work at a number of entry-level jobs then open.

There was additional testimony provided by Dr. Louis A. Fragola, Jr., who treated the employee for her dermatitis. He stated that the employee could not perform any work involving exposure to water or irritating hand washing. In addition, Dr. Fragola testified that she could not perform any entry-level job that involved stress because sweating resulting from stress could irritate her condition. Finally, he testified that there was no guarantee that the employee would not suffer an outbreak of dermatitis even if she were to be employed at a job not involving any of the aforementioned factors.

Relying upon this evidence, the commissioner found employee able to earn wages at another occupation that would be neither unhealthy nor injurious to her health. Reasoning that these entry-level jobs would pay minimum wage (then $3.10 per hour) for an average workweek of thirty-five hours, he found that she had an earning capacity of $108.40 per week. Based on that figure, the commissioner ordered that the employer may subtract this sum when computing payments for partial disability under the January 24, 1980 decree. Thus, the employee would receive no compensation at all. The commission affirmed the decree of the trial commissioner.

The issue confronting this court is whether an employee who is partially disabled by an occupational disease is entitled to have her postinjury earning capacity determined on the basis of an actual offer of suitable employment or on the basis of "available" employment.

The employee claims that the commission had to make a determination about earning capacity on the basis of an actual offer of employment.

■ It is clear that the employee's disability, as the result of an occupational disease, is compensable as a personal injury within the scope of the act. G.L.1956 (1979 Reenactment) § 28-34-2(29). At the time of her injury, G.L.1956 (1968 Reenactment) § 28-34-3 provided:

> "[I]f it shall be determined that such employee is able to earn wages at another occupation which shall be neither unhealthy nor injurious and such wages do not equal his full wages prior to the date of his disablement, the compensation payable shall be a percentage of full compensation proportionate to the reduction in his earning capacity."[1]

The pretrial procedure used to determine the earning capacity of an employee who is partially disabled under § 28-34-2 is set out in § 28-33-18. *Andrade v. Mintell,* 102 R.I. 148, 154-55, 229 A.2d 50, 54-55 (1967). Prior to 1969, G.L.1956 (1968 Reenactment) § 28-33-18 provided that a partially incapacitated employee should receive compensation in the amount of 60 percent of the difference between the employee's average weekly wages prior to the injury and those earned after the injury. The statute further provided that should the employee be unable to obtain any work or establish loss of earning capacity with reasonable definiteness, then the commission "shall have the power in the interest of justice" to determine the employee's weekly earning capacity based on evidence presented at the hearing.[2] *Id.*

In 1969 the Legislature amended § 28-33-18. P.L.1969, ch. 146, § 1. The amendment deleted all provisions permitting the commission to determine the earning capacity of an employee who did not work subsequent to his or her partially disabling injury. Section 28-34-3 provided that compensation payments to a partially disabled employee would be reduced by his or her postinjury earning capacity. However, because the amendment deleted the method

---

1. This entire section in G.L.1956 (1968 Reenactment) § 28-34-3 was deleted by the Legislature in 1982. P.L.1982, ch. 32, art. I, § 8.

2. The section further provided that should an employee be unable to find work he or she was able to perform while disabled and should the employer be unable to offer such work, the employee would receive weekly compensation in the "amount payable for total incapacity." *Id.*

of establishing the employee's earning capacity, the only means by which the compensation payments could be reduced was if the employee was actually employed. *See* G.L.1956 (1979 Reenactment) § 28–33–18. In *Podborski v. William H. Haskell Manufacturing Co.*, 109 R.I. 1, 10, 279 A.2d 914, 918–19 (1971), we rejected the commission's claim that it had "the inherent right" to establish the earning capacity of a partially incapacitated employee, holding that rights arising under the Workers' Compensation Act are purely statutory. "It is clear that in enacting P.L.1969, ch. 146, the Legislature intended that a partially disabled employee who has not returned to gainful employment as the result of work-connected injuries, receive the same amount as is payable for total incapacity." *Id.* at 9, 279 A.2d at 918.

■ Thus, in the case at bar, the commission acted without authority when it attempted to determine the employee's earning capacity. The employee was entitled to compensation payments for total disability under the original January 24, 1980 decree that awarded the employee compensation for her partial disability.

However, in 1982, while this appeal was pending, the Legislature made some substantial revisions in the Workers' Compensation Act. Included in the revisions was a new statute that reinstated the commission's power to determine the earning capacity of a partially incapacitated employee. Entitled Suitable Alternative Employment, the statute provides in part:

"(a) When an employee has sustained an injury which entitles the employee to receive benefits pursuant to §§ 28–33–18 or 28–34–3 the employee may be offered suitable alternative employment as determined in the discretion of the workers' compensation commission, or as agreed to by the employee and employer with written notice to the director of labor.

"(b) The acceptance of suitable alternative employment shall not be mandatory if it results in the inequitable forfeiture or loss of seniority with the employ-

er, monetary benefit or other substantial benefit including, but not limited to, vested pension and/or profit sharing contributions, arising from the employment relationship.

"(c) If suitable alternative employment as determined by the workers' compensation commission has been offered to the employee and such employee has refused to accept such employment, then the workers' compensation commission shall, in fixing the amount of compensation payable subsequent to such refusal, treat earnings capacity, as hereinbefore defined, as post injury earnings, requiring the employer or insurer to pay the injured employee a weekly compensation equal to sixty-six and two-thirds (66⅔%) percent of the difference between the employee's average weekly wage, earnings or salary before the injury and said weekly earning capacity."

P.L.1982, ch. 32, art. I, § 7, codified at G.L.1956 (1979 Reenactment) § 28–33–18.2.

The Legislature specifically made § 28–33–18 subject to § 28–33–18.2. P.L.1982, art. I, § 6. In addition, the Legislature amended the definitional section of the act, G.L.1956 (1979 Reenactment) § 28–29–2(f), to reflect these changes. "Earnings capacity [*sic*] can be established only by an actual offer of suitable alternative employment." P.L.1982, ch. 32, art. I, § 1.

The effective date of these provisions was September 1, 1982,

"provided, however, this Article shall not abrogate or vitiate preexisting decrees or agreements or substantive rights or be applicable to injuries sustained prior to September 1, 1982; provided, however, after September 1, 1982, employers and/or insurers shall be permitted to apply the provisions of section 28–33–18.2 to employees injured prior to the effective date of this act." P.L.1982, art. I, ch. 32, § 18.

■ It is a fundamental rule of statutory construction that statutes and their

amendments are given prospective application. *E.g., Murphy v. Murphy,* R.I., 471 A.2d 619, 623 (1984); *Fox v. Fox,* 115 R.I. 593, 596, 350 A.2d 602, 603–04 (1976); *Norton v. Paolino,* 113 R.I. 728, 734, 327 A.2d 275, 279, *reh. denied,* 114 R.I. 906, 327 A.2d 275 (1974). Courts will only give retrospective application to a statute when the Legislature, by express language or necessary implication, manifests its intent that the statute be given retrospective application. *State v. Healy,* R.I., 410 A.2d 432, 434 (1980); *State v. Mulholland,* 117 R.I. 321, 323, 366 A.2d 153, 154 (1976). In addition, remedial and procedural statutes may be applied retrospectively absent a legislative intent to the contrary. *Spagnoulo v. Bisceglio,* R.I., 473 A.2d 285 (1984); *Fox v. Fox,* 115 R.I. at 597, 350 A.2d at 604.

The Legislature expressly stated that § 28–33–18.2 should be given retrospective effect when it provided that "employers and/or insurers shall be permitted to apply" the statute to employees injured prior to September 1, 1982. P.L.1982, ch. 32, art. I, § 18. We are not of the opinion that the "shall be permitted" language is precatory in nature. Instead, it is a directive to employers and insurers that, unlike the remainder of the amendments contained in P.L.1982, ch. 32, art. I, the provisions of § 28–33–18.2 are to be applied retrospectively.

 Section 28–33–18.2 is remedial and procedural in nature. Its obvious purpose is to provide a mechanism by which to determine the earning capacity of unemployed partially disabled workers. It does not create or alter existing substantive rights. "It is not an insuperable objection to a remedial statute that it affects pending suits, if it affects them remedially, and neither violates vested rights nor impairs the obligation of contracts." *Grinnell v. Marine Guano and Oil Co.,* 13 R.I. 135, 136 (1880). When the Legislature intends a law to have retrospective effect, this court applies the law in effect at the time of appeal and not at the time of the original

decree. *Richtmyer v. Richtmyer,* R.I., 461 A.2d 409, 411 (1983); *Scheuerman v. Woronoff,* R.I., 459 A.2d 957, 959 (1983).

■ It is clear that it was the intent of the Legislature that § 28–33–18.2 be applied retroactively. Therefore, in order to establish the employee's "earning capacity," she must receive an actual offer of "suitable alternative employment."

The employee's appeal is sustained, the decree appealed from is vacated, and the case is remanded to the Workers' Compensation Commission for further proceedings in accordance with this opinion.