**G.W. DAHL COMPANY, INC.**

v.

**John H. WILSON.**

No. 86–130–M.P.

Supreme Court of Rhode Island.

Feb. 10, 1988.

David Carroll, Berndt W. Anderson and William M. Heffernan (on the brief), Roberts, Carroll, Feldstein & Tucker, Inc., Providence, for plaintiff.

Stephen Rappoport, East Providence, Steven Jay Hirsch, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the petition for certiorari of G.W. Dahl Company, Inc. (employer), to review a final decree of the Workers' Compensation Appellate Commission (Appellate Commission). The Appellate Commission's decree had sustained the refusal by John Wilson (employee) to accept alternative employment pursuant to the provisions of G.L. 1956 (1979 Reenactment) § 28–33–18.2, as amended by P.L. 1982, ch. 32, art. I, § 7. We quash the final decree. The facts of this case insofar as pertinent to our review are as follows.

The employee was injured during the course of his employment on September 9, 1983. At that time he was earning $428 per week for a forty-hour week. On August 21, 1984, employer offered to employee alternative employment in accordance with § 28–33–18.2 at a weekly wage of $336 per week. The job description set forth in the offering letter was as follows: "50% of the time working at a desk doing paper work and 50% of the time doing follow-up on orders which include walking, standing, bending three to four to five times a day, lifting weights of 15 to 20 lbs. three or four times a day."

The employer's letter went on to state that the benefits accompanying this job were the same as those previously received by employee, except that such benefits were keyed to his new rate of pay. On this modified basis, he would receive holiday pay, personal-time pay, and life insurance. He was assured that his seniority would not be affected by the new job.

When employee refused the offer of alternative employment, employer filed a Notice of Intent to Discontinue, Suspend, or Reduce Payments according to G.L. 1956 (1979 Reenactment) § 28–35–46, as amended by P.L. 1982, ch. 32, art. I, § 10. Pursuant to this notice, hearings were held before a trial commissioner who rendered a bench decision on October 30, 1985. The trial commissioner found that the job specifications were within the employee's physical capabilities as those capabilities had been described by Dr. Stanley J. Stutz. However, the trial commissioner also found that the reductions in profit sharing, life insurance benefits, and holiday-pay eligibility justified employee's refusal to accept the proffered alternative employment. The trial commissioner based his determination upon the provision of § 28–33–18.2(b) that reads as follows:

"The acceptance of suitable alternative employment shall not be mandatory if it results in the inequitable forfeiture or loss of seniority with the employer, monetary benefit or other substantial benefit including, but not limited to, vested pension and/or profit sharing contributions, arising from the employment relationship."

The employer appealed to the Appellate Commission, which affirmed the findings of fact and the conclusions of law of the trial

commissioner. Specifically, the Appellate Commission held that employer had established that the alternative employment was within the physical capabilities of employee but that the alternative employment would bring about an inequitable forfeiture of benefits as found by the trial commissioner.

This petition for certiorari brought by employer raises a single issue.[1] We must construe the intention of the Legislature in the language that it adopted in § 28–33–18.2. We ask in essence, what did it mean by an "inequitable forfeiture" of "a monetary benefit or other substantial benefit including, but not limited to, vested pension and/or profit sharing contributions, arising from the employment relationship"?

In order to answer this question, we must first determine the general legislative design in enacting § 28–33–18.2. It would seem reasonably clear that the general design was to encourage employees who were capable of accepting alternative employment to do so. The section further provides a sanction for refusal to accept suitable alternative employment, namely, reduction of benefits to reflect the postinjury-earning capacity represented by the alternative employment as set forth in § 28–33–18.2(c). It is manifest by reason of cross-reference between § 28–33–18.2 and § 28–33–18, as amended by P.L. 1982, ch. 32, art. I, § 6, that the Legislature contemplated that such alternative employment might be less rigorous in nature than the preinjury employment and therefore compensated at a lesser wage than the preinjury wage. In such a situation § 28–33–18 provides that the employer will pay 66⅔ percent of the difference between the preinjury and the postinjury wages.

In effect, the Legislature intended that an employee should return to work, if able to do so, at a wage rate less than he earned prior to his injury. By requiring the employer to make up 66⅔ percent of the difference, the Legislature guaranteed the employee against loss when he moved either from total to partial compensation or from a greater to a lesser partial compensation by accepting the alternative employment. The design was intended to provide an incentive to the employee to return to work and for the employer to offer him an opportunity to do so. In order to trigger the operation of this legislative design, the employee must receive an actual offer of suitable alternative employment. *See Wayland Health Center v. Lowe*, 475 A.2d 1037 (R.I. 1984).

"Suitable alternative employment" is defined by G.L. 1956 (1979 Reenactment) § 28–29–2(7), as amended by P.L. 1982, ch. 32, art. I, § 1, as "employment, or an actual offer of employment which the employee is physically able to perform and will not exacerbate the employee's health condition and which bears a reasonable relationship to the employee's qualifications, background, education and training." By definition it is not required that the alternative employment be compensated by a wage equal to the preinjury wage. However, the employee is protected against "inequitable forfeiture or loss of seniority * * * monetary benefit or other substantial benefit including, but not limited to, vested pension and/or profit sharing contributions * * * ." Section 28–33–18.2(b).

The uncontradicted testimony in the case at bar shows that employee's seniority would be unaffected by his return to work at a lower wage. However, it is equally clear that his life insurance, pension contribution, profit sharing, and holiday pay would be based upon the reduced wage of $336 per week as opposed to his preinjury wage of $428 per week. The trial commissioner and the Appellate Commission concluded that this was an "inequitable forfeiture." We disagree. There is no forfeiture of any right previously vested in em-

---

1. The employee in his brief argues that both the trial commissioner and the Appellate Commission were in error in finding that employee was physically capable of performing the alternative employment. However, employer's petition for certiorari raises only the issue of suitability of the offer of alternative employment. The employee did not file a cross-petition for certiorari in order to review the physical findings of the Appellate Commission. *See Jerry Brown Farm Association, Inc. v. Kenyon*, 119 R.I. 43, 48 n.3, 375 A.2d 964, 967 n.3 (1977).

ployee. The only change in respect to pension benefits would be that employer's future contributions made on behalf of employee would be based on the new reduced wage. Such prior contributions as were made based upon the preinjury wage would not be forfeited since the employee's rights in the plan had become vested.

It is equally clear that while employee remains in his present status of receiving compensation for total disability, no pension contributions are made on his behalf by employer and employee would no longer be entitled to life insurance once he failed to be actively employed for more than a year. He would also be entitled to no profit sharing if he were unemployed for an entire calendar year. In effect, the return to alternative employment at a lesser wage would reinstate all these benefits with lesser contributions in place of no contributions at all. In sum, there is no forfeiture, but rather a partial restoration of benefit contributions.

The holding of the Appellate Commission would in effect modify the statute in respect to suitable alternative employment to require that any alternative employment must be at a wage at least equal to the preinjury wage. This could not have been the intent of the Legislature, since it is clear beyond doubt that § 28–33–18.2 read together with § 28–33–18 contemplates that the alternative earnings may be less than the preinjury earnings. In such event, employer must make up 66⅔ percent of the difference. Obviously the Legislature took into account the probability that reduced earnings would lessen future benefits when such benefits would be based upon earnings. Such reduced benefits were doubtless considered to be preferable to no benefits at all, which would be the result of unemployment based upon total incapacity.

We are therefore constrained to conclude that the Appellate Commission erred as a matter of law in its holding that the offer of alternative employment in this case would result in an "inequitable forfeiture of a monetary benefit or other substantial benefits."

For the reasons stated, the employer's petition for certiorari is granted. The final decree of the Appellate Commission is hereby quashed. The papers in the case are remanded to the Appellate Commission with our decision endorsed thereon and direction to enter a new final decree consistent with this opinion.