## Paul OLADAPO

v.

## CHARLESGATE NURSING CORPORATION.

No. 90–275–M.P.

Supreme Court of Rhode Island.

May 3, 1991.

Michael S. Schwartz, Mandell, Goodman, Famglietti & Schwartz, Providence, for plaintiff.

Berndt W. Anderson, Roberts, Carroll, Feldstein & Peirce, Providence, for defendant.

## OPINION

MURRAY, Justice.

Paul Oladapo (employee) is petitioning for certiorari to review a judgment of the Appellate Commission of the Workers' Compensation Commission (WCC).[1] The judgment in question reduced employee's workers' compensation benefits under the guise of G.L.1956 (1986 Reenactment) § 28–33–18.2(c).[2] We affirm the Appellate Commission.

The parties do not dispute the facts. The employee was injured on October 30, 1983, while working at Charlesgate Nursing Corporation (Charlesgate or employer). In a written agreement dated January 25, 1984, Charlesgate agreed to pay employee two-thirds of his average weekly wages commencing October 31, 1983, for the "dura-

---

1. This matter was decided by the Workers' Compensation Appellate Commission on May 1, 1990, before the commission was relabelled the Workers' Compensation Court on July 11, 1990. Accordingly, we shall use terminology in place as of May 1, 1990.

2. General Laws 1956, § 28–33–18.2 was originally enacted by P.L.1982, ch. 32, art. 1, § 7. The

employee was injured in 1983. The employer's tender of purported suitable alternative employment occurred in 1985. We need not discuss the implications of 1984, 1985, 1986, and later amendments to § 28–33–18.2 since those amendments do not affect the outcome of the case. See P.L.1984, ch. 142, art. VI, § 8; P.L. 1984, ch. 450, § 3; P.L.1985, ch. 365, § 6; P.L. 1986, ch. 507, § 7.

tion of total incapacity." Thus employee was receiving total incapacity benefits under § 28–33–17.

On July 25, 1985, employer offered employee a newly created "light duty" job. The letter informing employee of this job stated that if employee did not respond by August 5, 1985, it would be assumed employee was not interested in the position. The employee consulted with his doctor, who advised him not to accept the position because it would be too strenuous.

The employer then petitioned the WCC to reduce benefits under § 28–33–18.2 on the basis that employee had refused to accept suitable alternative employment. Section 28–33–18.2 as enacted in 1982 states in relevant part:

"a) When an employee has sustained an injury which entitles the employee to receive benefits pursuant to sections 28–33–18 or 28–34–3 [3] the employee may be offered suitable alternative employment as determined in the discretion of the workers' compensation commission, or as agreed to by the employee and employer with written notice to the director of labor.

\* \* \* \* \* \*

"c) If suitable alternative employment as determined by the workers' compensation commission has been offered to the employee and such employee has refused to accept such employment, then the workers' compensation commission shall, in fixing the amount of compensation payable subsequent to such refusal, treat earnings capacity, as hereinbefore defined, as post injury earnings, requiring the employer or insurer to pay the injured employee a weekly compensation equal to sixty-six and two-thirds (66⅔%) percent of the difference between the employee's average weekly wage, earnings or salary before the injury and said weekly earning capacity."

The employer's petition was decided by a commissioner on March 12, 1986. The commissioner heard medical testimony and decided that although employee was partially disabled, he was capable of performing the light-duty position offered by employer. He further ruled that employee had refused to accept the offer of suitable alternative employment and thus employer was entitled to pay reduced benefits under § 28–33–18.2(c).

Within minutes after the commissioner's hearing and bench decision on March 12, 1986, employer informed employee that it was revoking the outstanding offer of a light-duty position. We assume for the purpose of this appeal that employer's statement that it "would assume employee was not interested" in the offer of light-duty employment if employee did not respond by August 5, 1985, did not operate as a revocation of the offer on August 5.

The commissioner was confounded when he heard that employer had revoked its job offer immediately after he had rendered his decision. Hence a subsequent hearing was held. Despite the fact that the commissioner's original decision stated that employee had refused an offer of suitable alternative employment and that employee's compensation was to be reduced by § 28–33–18.2(c), the commissioner said that upon his determination that a tendered job offer is suitable alternative employment, employee must be given the opportunity to accept the employment. After a reasonable opportunity for an employee to accept the offer has passed, and that employee has failed to accept, then the employee may

---

**3.** We note that § 28–33–18 as mentioned in the statute refers to employees receiving partial incapacity benefits. Section 28–34–3 refers to employees receiving benefits for occupational diseases. The employee was receiving total incapacity benefits under § 28–33–17. At the hearing on employer's petition to·reduce benefits, the workers' compensation commissioner made a factual finding that employee was partially disabled. Despite this factual finding, and the fact that § 28–33–18.2 is inapplicable unless an employee is partially disabled, employer's several briefs before this court and the Appellate Commission of the WCC states that this employee is totally disabled. Because employee has failed to challenge employer's apparent misstatement, and because we have an undisputed factual finding by the commissioner of partial incapacity, we are proceeding on the assumption that employee is collecting § 28–33–18 benefits, since the record does not indicate otherwise.

be sanctioned under § 28–33–18.2(c). The commissioner justified his statement by citing § 28–33–18.2(a), which states that an offer is deemed to be a suitable alternative either upon determination by the WCC or by agreement of the employer and the employee. Therefore, to say that an employee need not be given the opportunity to accept an offer after it has been deemed suitably alternative by the WCC is tantamount to saying that the employer is given the unilateral power to deem a position a suitable alternative. Despite his belief that bad law was being made, the commissioner stated that because of the posture of the instant case, he could not modify his decree.

The employer responded by stating that to give the above interpretation to the statute would effectively remove it from the statute books. The purpose of the statute is to try to get employees back to work if they are able. *G.W. Dahl Co. v. Wilson,* 537 A.2d 123, 125 (R.I.1988). In practical terms, if an employer wants to proffer a job as a suitable alternative, but is told by legal counsel that he will have to keep the job available for possibly several months or years should the employee dispute the matter and the question of the offer's suitability goes before a commissioner for decision, then no employer is going to extend offers of alternative employment. To require an employer to hold a job open so that an employee can be given the opportunity to accept the offer months or years later is economically unrealistic for employers.

The Workers' Compensation Appellate Commission upheld the commissioner's decree. The Appellate Commission ruled that there was no legislative intent in § 28–33–18.2(a) that the WCC must determine that a tendered employment is suitable before it can be deemed offered to an employee. It stated that the legislative intent was that the employee who refuses his or her employer's offer of alternative employment does so at the peril that the WCC will later deem the offered position to be suitable. We affirm the Appellate Commission.

We agree with the Appellate Commission's statutory construction. The statute itself does not set out the chronological order when a job is deemed to be suitable and/or when an employee must accept an offer. Accordingly we must interpret the statute to give it effect and avoid making it a nullity. We agree with the employer that to hold that the employer must keep a job open until the matter can be heard by the WCC would effectively wipe the statute off of the books since employers cannot economically afford to keep such offers available for prolonged periods. We realize that the decision we make today means that employees must take a gamble. They must either accept a tendered position (and the employer's unilateral determination that the position is a suitable alternative) or risk a later adverse determination by the WCC that he or she *should* have taken the position because it was a suitable alternative. Nevertheless, such a holding comports with the statute presently on the books. If inclined, the Legislature can amend the statute to set out the chronology of offer and acceptance of tenders of purported suitable alternative employment.[4]

The employee's petition for certiorari is denied. The writ previously issued is quashed. The decree of the Appellate Commission of the Workers' Compensation Commission is affirmed. The papers of the case are remanded to the Workers' Compensation Commission.

4. We note that a nonextensive examination has turned up other statutes with the same import as § 28–33–18.2, but none that are precisely the same. *See, e.g.,* Del.Code Ann. tit. 19, § 2353(c) and Ind.Code Ann. § 22–3–3–11 (Burns Code Ed.1974). The only case we have been able to locate that is similar to the instant one is *Jones & Laughlin Steel Corp. v. Kilburne,* 477 N.E.2d 345, 350 (Ind.App.1985), which appears to state that the employer's obligations are suspended when the employee refuses a tendered position but that those obligations are later revived if an employee's refusal is deemed justified.