## WORCESTER TEXTILE

v.

## Vivian McINTOSH.

## No. 89–327–M.P.

Supreme Court of Rhode Island.

June 21, 1991.

Michael R. DeLuca, Robert Lovegreen, Gidley, Lovegreen & Sarli, Providence, for plaintiff.

John B. Ennis, Cranston, for defendant.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on an employee's petition for writ of certiorari seeking reversal of the decree of the Workers' Compensation Appellate Commission.[1]

On February 2, 1982, Vivian McIntosh (McIntosh) sustained a personal injury during the course of her employment at Worcester Textile. The injury rendered her totally incapacitated for any kind of work. Accordingly, the Workers' Compensation Commission (commission) ordered the payment of compensation benefits.

On May 24, 1985, Worcester Textile filed a petition to review the commission's decree awarding benefits to McIntosh. The

1. Pursuant to P.L.1990, ch. 332, entitled "An Act Relating to Workers' Compensation," the Workers' Compensation Commission is now to be referred to as the Workers' Compensation Court, the trial commissioners are to be referred to as judges, and the appellate commission is to be referred to as the appellate division. This Act was signed into law by then Governor Edward D. DiPrete in July 1990. For the purpose of this opinion, however, we will employ the traditional terms because the matter transpired prior to July 1990.

petition alleged that McIntosh's incapacity for work had ended or diminished. During a hearing before the trial commissioner, Worcester Textile presented a description of "suitable alternative employment" that had been offered to McIntosh pursuant to G.L.1956 (1986 Reenactment) § 28–33–18.2. The position offered was that of a specker and was described at the hearing as follows:

> "The position consists of standing or sitting before a flat, upright inspection work area called a perch. The fabric is draped over the perch and is moved by hand over a series of rollers. Little or no measurable effort is involved. The Specker removes foreign matter from the fabric using burling irons (a tweezer like tool). Fabric will be supplied and finished work removed by floor workers; no lifting is involved. A bench, chair, or stool will be provided so that you may sit or stand as you feel comfortable."

McIntosh declined to accept the job.

At the hearing before the trial commissioner, Dr. Cyril Bellavance (Dr. Bellavance), the treating physician, testified that McIntosh remained totally incapacitated and could not perform any type of work. The doctor explained: "[S]he is totally disabled from doing any kind of work because any time she goes to do anything, her endurance is so poor she has to discontinue it and rest."

Doctor Frederick Johnson testified on behalf of Worcester Textile. He testified that he examined McIntosh and was of the opinion that she could perform the duties of a specker. The trial commissioner appointed Dr. Stanley Stutz (Dr. Stutz), an orthopedic surgeon, as an impartial examiner. Doctor Stutz examined McIntosh on January 27, 1986, and in his report concluded the following: "I find this woman partially disabled, but total as to her normal job. She can do a job such as she sits and stands intermittently at her own discretion."

During the hearing, moreover, McIntosh admitted that she had returned to her employment as a crossing guard with the North Providence School Department in June of 1985.

At the conclusion of the evidence, the trial commissioner held that Worcester Textile had failed to prove that McIntosh's incapacity had ended. However, the commissioner did find that McIntosh's ability to work had changed from total to partial incapacity. Consequently Worcester Textile was ordered to pay partial-incapacity benefits.

Worcester Textile then filed a petition concerning the offer of what it considered to be "suitable alternative employment." The trial commissioner, concluding that McIntosh had refused an offer of suitable alternative employment that she was capable of performing, ordered the suspension of all future compensation.

McIntosh filed an appeal to the Appellate Commission, asserting error on the part of the trial commissioner in his evaluation of the evidence. The Appellate Commission affirmed the decision of the trial commissioner. The employee then filed a petition for writ of certiorari with this court.

■ When reviewing decisions from the Workers' Compensation Appellate Commission, this court has its function to review the record to determine whether any legally competent evidence exists to support the findings of the Appellate Commission. "If such evidence exists, the commission's findings are binding upon this court absent fraud." *Falvey v. Women & Infants Hospital*, 584 A.2d 417, 419 (R.I.1991)(citing *Carter v. ITT Royal Electric Division*, 503 A.2d 122, 124 (R.I.1986)).

■ Section 28–33–18 provides that the employer shall pay to a partially incapacitated employee a weekly compensation "equal to sixty-six and two-thirds percent (66⅔%) of the difference between his average weekly wages * * * before the injury and his or her weekly wages * * * thereafter." McIntosh initially contends that in light of § 28–33–18 the Appellate Commission was clearly wrong in upholding the decision of the trial commissioner. She argues that the trial commissioner, by suspending all disability compensation, made a

significant error when he determined that the wages offered to her as a specker were identical to her average weekly earnings prior to sustaining her injury. Worcester Textile concedes that the wage calculation is obviously incorrect. In our view, however, such an error does not warrant reversal of the entire Appellate Commission's decision. The crucial determination by the trial commissioner was that Worcester Textile had offered suitable alternative employment to its partially incapacitated employee. In view of the record, we find legally competent evidence to support the Appellate Commission's decision to uphold the trial commissioner's determination that McIntosh had refused suitable alternative employment. Once this fact is established, any resulting error in the calculation of partial-incapacity benefits is, in our view, harmless error. Consequently we remand this matter to the Appellate Commission for a recalculation of the weekly compensation owed to employee as a result of her refusal to accept suitable alternative employment.

The employee next contends that the trial commissioner erred in accepting the testimony of the impartial examiner, Dr. Stutz. Specifically, employee argues that Dr. Stutz never actually concluded that she would be able to work as a specker.

At the hearing before the trial commissioner, Dr. Stutz testified concerning the types of work that McIntosh could perform. He concluded, as we began earlier:

"I find this woman partially disabled, but total as to her normal job. She can do a job such as she sits and stands intermit-

tently at her own discretion. * * * She can only sit for short periods of time and walk such as in an office environment. * * * She is able to sit at one time for approximately one hour."

The trial commissioner, after listening to a description of the job of specker, concluded that employee was physically able to perform the job.[2]

■ We recognize that Dr. Stutz's testimony never specifically addressed the question of whether McIntosh was physically able to perform the duties of a specker. Nevertheless, in our view, it is not necessary for an impartial medical examiner to testify that an employee is physically capable of performing the particular job that has been offered as suitable alternative employment. The medical evidence need only address the employee's physical condition and the capacity of that employee for work-related activity.

■ Doctor Stutz offered his opinion concerning the nature of the employment that McIntosh was physically able to endure. This testimony, coupled with the evidence describing the physical requirements associated with the position of specker, formed the basis of the trial commissioner's decision that employee was able to perform the alternative employment. In our view there is sufficient evidence to support the Appellate Commission's decision that the trial commissioner was correct in reaching this determination.

■ McIntosh lastly contends that the decision of the trial commissioner was strongly influenced by his personal knowl-

2. The job description was thoroughly provided through the testimony of Worcester Textile's personnel director. We cite a portion of the transcript:

"Q. Okay. Relating to the job of a specker, is there a provision at Worcester Textile to allow for Mrs. McIntosh if she had to lie down for a period of time during the course of a day?
"A. We could accommodate that, yes.
"Q. To what extent?
"A. To provide a cot in a lounge area where she could lie down. She could walk, sit, stand, if she felt comfortable and certainly if that was necessary for her to perform the job, we could supply that.

"Q. And how long would she be able to lie down during the course of the day?
"A. I am not certain what is necessary to her to lie down. What is necessary she could do. * * * An employee who is not well would be allowed to lie down, sit down, whatever is necessary. Obviously, if it's 45 minutes out of the hour, that would be a little bit difficult for us to accommodate. But if it would be one per ten, fifteen minute period throughout each hour, we could accommodate that.
"Q Every day of the year?
"A. Every day of the year."

edge of controverted facts not introduced into evidence. She argues that the trial commissioner, because of his personal knowledge concerning employer, its plant, and the position of specker, provided his own factual basis for his ultimate decision.[3]

The trial commissioner, as his remarks reveal, was obviously familiar with the duties of a specker. Nevertheless, sufficient evidence existed on which the trial commissioner based his determination. The trial commissioner listened to the testimony of three physicians. He also heard testimony describing the physical requirements associated with the position of specker as well as the measures that would be taken by Worcester Textile to accommodate McIntosh's needs. In light of the testimony, we find there is legally competent evidence to support the decision of the Appellate Commission that the trial commissioner's extrajudicial knowledge did not amount to prejudicial error.

For these reasons the employee's petition for writ of certiorari is granted in part and denied in part. That portion of the decree of the Appellate Commission affirming the denial of benefits is vacated; the remainder of the decree is affirmed. The papers of the case are remanded to the Appellate Commission with our opinion endorsed thereon for a determination of the partial-incapacity benefits owed to the employee for her refusal to accept suitable alternative employment.

---

**3.** McIntosh cites several occasions when the trial commissioner spoke about matters within his personal knowledge and not from the evidence. Of significance are the following comments:

"You must go there and observe what they are talking about, when they talk about speckers there. Worcester Textile does a tremendous job of accommodating people. I will tell you right now. I saw the operation."

"* * *

"Mr. Ennis, might I say that that's an excellent description of what that job is."