**Darrell PION**

v.

**BESS EATON DONUTS FLOUR CO., INC.**

No. 93–80–M.P.

Supreme Court of Rhode Island.

Feb. 15, 1994.

John Harnett, John Toro, Lovett, Schrefin, Gallogly & Harnett, Providence, Anthony DelToro, Frank J. DiBiase, Mariam A. La-

voie, Carrillo & Cordeiro, Warwick, for plaintiff.

Jeffrey Liptrot, Ann Gancz, Earl Metcalf, Gallagher & Gallaher, Providence, for defendant.

## OPINION

MURRAY, Justice.

This matter came before this court on the petition of an employee, Darrell Pion (Pion), for certiorari. Pion seeks review of a final decree of the Appellate Division of the Workers' Compensation Court (Appellate Division) that affirmed the decree of the trial judge. We affirm the final decree of the Appellate Division.

When the Workers' Compensation Court trial judge heard this case on December 20, 1991, both Pion and the employer, Bess Eaton Donuts Flour Co., Inc. (Bess Eaton), stipulated to the following facts: On April 11, 1991, Pion sustained an injury to his left foot, left leg, and lower back. His first day of incapacity was April 12, 1991, and he was "incapacitated totally" starting on that date. Pion had a spouse · dependent on him for support. They also stipulated that the only issue was that of "suitable alternative employment." To clarify, the parties agreed that the issue was whether Pion's return to work met the definition of suitable alternative employment set forth in the Workers' Compensation Act (WCA), thereby qualifying Pion for certain protections in the event of the termination of his employment.

Pion testified that on the date of his injury he was employed by Bess Eaton as a Bess Eaton Donuts store manager. His duties included operating the store, ensuring that products were out on display, and attending to such responsibilities as hiring, firing, dealing with employees' problems, and ordering stock. His managerial tasks also involved lifting one-hundred-pound bags of sugar and tanks of iced coffee that weighed approximately fifty to sixty pounds, as well as carrying the trash out to the trash containers. He estimated that the trash, which contained coffee grounds, weighed approximately forty to fifty pounds. His job required him to perform these lifting and bending activities on a daily basis.

Pion further testified that after his injury, he contacted Bess Eaton and returned to his regular job on or about July 9, 1991. In response to a query by the trial judge regarding whether he had received "any offers or anything from Bess Eaton," he replied in the negative. In response to another question by the trial judge, Pion explained why he went back to work: "Actually I was getting too tired of sitting home. I'm very fidgety. I like working. The cat thought I was a piece of furniture. So I had to get out of the house."

After starting back at the same job, he experienced pain and difficulty lifting heavy objects and performing his duties. One day in September, he left work for an appointment with his doctor and notified the district manager, Dennis Medeiros (Medeiros), who advised Pion to "talk to your doctor and then come back to me and we'll try to work something out."

Pion went to the doctor and obtained a note for light-duty work, which he gave to Medeiros. Medeiros discussed Pion's situation with Bess Eaton representatives, and Pion testified that "what they did is they changed my position for the time being. I was actually [trouble-] shooting stores, going into them working with the stores to get their percentage up, increase sales." This position did not require any lifting at all because other people worked for him. He was then working seventy to eighty-five hours a week. His job title was still listed as manager, but he had become a travel manager, working with more than one store.

Medeiros had Pion sign a letter, which stated at the top, "Limited Duty/Doctor['s] Note." The body of the letter provided:

"Darrell based on the letter Bess Eaton received from your doctor, be here advised to remain true to the demands of care. As of this date you are urged to refrain from any lifting that would place undue strain on your lower back or left knee. This means filling buckets, ice coffee, * * * [l]arge [s]ugar bags, or boxes of any items, [i.e.,] cups. Thank you for your strict compliance."

Pion was the sole witness at trial. After both sides had rested, the trial judge issued a bench decision, noting that the only issue for him to resolve was the effect of Pion's return to work. The trial judge made several findings of fact, including the following: that Pion sustained an injury to his back, knee, and foot on April 11, 1991, that arose out of and in the course of his employment with Bess Eaton; that he was a store manager at the time and was injured when a dumpster fell on his left foot and caused him to fall backward; that Pion was "totally incapacitated" from April 12, 1991 through July 8, 1991, whereupon he became "partially incapacitated"; and that Pion returned to work at an average weekly wage equal to or exceeding his preinjury earnings and was considered under the WCA to be "no longer disabled." He ordered Bess Eaton to pay workers' compensation benefits for total incapacity from April 12 to July 8, 1991, and all reasonable medical, hospital, and surgical bills pursuant to the WCA.

He also reasoned through Pion's and Bess Eaton's arguments regarding suitable alternative employment. He stated that Pion asserted that his return to work in this case constituted acceptance of an offer of suitable alternative employment. Bess Eaton countered with the contention that Pion was working within his restrictions but that this was not suitable alternative employment that would entitle him to certain protections under G.L.1956 (1986 Reenactment) § 28–33–18.2. The trial judge concluded that this situation did not involve an offer of suitable alternative employment.

Pion appealed to the Appellate Division, which affirmed the trial judge by a two-to-one vote. The majority of the three-member panel concluded that sufficient evidence existed to support the trial judge's findings and that the trial judge had committed no error. The majority framed the dispositive issue as "whether when the petitioner returned and was assigned lighter duties, his job may be viewed as suitable alternative employment pursuant to § 28–33–18.2." The Appellate Division characterized what Pion sought as "a relationship that may be referred to as 'constructive suitable alternative employment.'" They reasoned as follows:

"It is obvious from the section entitled 'Suitable Alternative Employment,' the [L]egislature has prescribed a method by which this type of employment may be offered and has also outlined the perameters [sic] within which said offer must be made. It is our belief that if the [L]egislature had anything less intended it would have so stated in the section."

The dissenter believed that the statutory definition was met and relied on his conclusion that the parties had "mutually agreed" to the employee's performing suitable alternative employment. He also discussed the statutory definition of suitable alternative employment and interpreted it to mean that such employment may be "either (1) postinjury alternate employment that the employee seeks out and applies for, or (2) some type of different or alternate employment duties from the duties engaged in at the time of injury, which different employment is offered by the employer."

In the dissenter's view, a controlling case was *Anthony & Associates v. Theodore*, W.C.C. 88–8809 (App. Div. Sept. 1991), in which the Appellate Division held that postinjury lighter work that the injured employee had sought was suitable alternative employment. We note that the dissenter wrote *Anthony & Associates*. He reasoned that the record in this matter established that Pion's postinjury work for Bess Eaton was "(1) by *agreement*, (2) was *suitable*, as evidenced by the medical report of the employee's physician * * *, and (3) was alternate, as evidenced by the letter of the employer's district manager, Medeiros."

Pion raises several arguments before this court. He claims that the Appellate Division misinterpreted and misapplied § 28–33–18.2 in two ways: (1) the Appellate Division erred by not finding that the "subsequent offer of employment" by Bess Eaton met the statute's definition of suitable alternative employment and (2) the Appellate Division failed to construe the statute's language liberally in accordance with the statute's requirements. He also contends that the legislative intent underlying suitable alternative

employment does not support the Appellate Division's interpretation, that the lower court's decision conflicts with the goals of the WCA, and that the facts of this case do not support the trial judge's view that Pion's earning capacity has been restored. Finally, he argues that the facts of this case satisfy the statutory elements required to establish suitable alternative employment: the position of traveling manager was agreed to by Pion and Bess Eaton, it was suitable to Pion's physical limitations, and it was "alternate" to his preinjury position.

We believe that these arguments for the most part address various facets of the same central contention: that the Appellate Division erred in its application and interpretation of § 28–33–18.2 by finding that Pion's postinjury return to work did not meet the statutory definition of suitable alternative employment. It is this contention that we discuss. We emphasize that our review of the Appellate Division's decree in this case is limited to determining whether it erred in deciding a question of law. *See Lacroix v. Nulco Manufacturing Co.*, 618 A.2d 1285, 1287 (R.I.1993) (citing § 28–35–30(a)(3)).

By way of background we note that workers' compensation benefits are entirely statutory creations, not based on common-law principles. *See* John P. Ludington et al., *Modern Workers Compensation* § 100:1 at 1 (1993). The term "suitable alternative employment" is a creation of the WCA. It is defined as "employment, or an actual offer of employment which the employee is physically able to perform and will not exacerbate the employee's health condition and which bears a reasonable relationship to the employee's qualifications, background, education and training." General Laws 1956 (1986 Reenactment) § 28–29–2(7). The WCA also addresses such matters as how suitable alternative employment may be created, when acceptance of such employment is not mandatory, the effect of an employee's refusal of such employment, and to what compensation the employee is entitled if the employer terminates the suitable alternative employment.

*See* § 28–33–18.2. The Legislature's objective in enacting these provisions was to encourage employees to accept suitable alternative employment if they are capable of doing so. *See G.W. Dahl Co. v. Wilson*, 537 A.2d 123, 125 (R.I.1988).

Before we address the question of suitable alternative employment, however, we must discuss a preliminary issue. In his brief, Pion indicates that Public Laws 1992, ch. 31, § 5 [1] amended the provisions of § 28–33–18.2 but states that he relies on the text of the statute as it existed in 1991 for purposes of his petition. In its brief, Bess Eaton quotes from the current version of the statute, as amended, without reference to the amendment.

The version of § 28–33–18.2, as amended by P.L.1990, ch. 332, art. 1, § 3, effective in 1991 provided in pertinent part as follows:

"(a) When an employee has sustained an injury which entitles the employee to receive benefits pursuant to sections 28–33–18 or 28–34–3 the employee may be offered suitable alternative employment as determined by the workers' compensation court, or as agreed to by the employee and employer with written notice to the director."

Public Laws 1992, ch. 31, § 5 amended this subsection, starting after the cross-reference to other sections of the WCA, to read: "[T]he employee may * * * *become capable of* suitable alternative employment as determined by the workers' compensation court, or *may be offered suitable alternative employment* as agreed to by the employee and employer with written notice to the director."

Section thirty-one of the public law stated in relevant part:

"This act shall take effect upon passage and shall not abrogate or affect substantive rights or pre-existing agreements, preliminary determinations, orders or decrees, provided, however, that *all procedural provisions [ ] shall be applicable retroactively, regardless of the date of injury,* to all employees, employers, insurers, and other parties or persons, except where otherwise

---

1. The bound edition of the 1992 Public Laws contains an incorrect version of chapter 31, which omits section 31. When we cite chapter 31 in this opinion, we refer to the correct version.

specifically indicated." (Emphasis added.) P.L.1992, ch. 31, § 31.

This section also specifically enumerated certain amendments contained in the act that would apply only to injuries occurring on or after the date of the act's passage; § 28–33–18.2 was not among them. This act became law on May 18, 1992.

■ Generally, it is presumed that statutes and their amendments are "to operate prospectively unless it appears by clear, strong language or by necessary implication that the Legislature intended to give the statute retroactive effect." *VanMarter v. Royal Indemnity Co.*, 556 A.2d 41, 44 (R.I. 1989). If a statute lacks clear direction or necessary implication concerning its retroactive application, the difference between a substantive statute and a remedial or procedural statute becomes relevant. *See Lawrence v. Anheuser–Busch, Inc.*, 523 A.2d 864, 869 (R.I.1987). Substantive statutes, which create, define, or regulate substantive legal rights, must be applied prospectively. *See id.* In contrast, remedial and procedural statutes, which do not impair or increase substantive rights but rather prescribe methods for enforcing such rights, may be construed to operate retroactively. *See id.*

■ In a previous case, this court engaged in this concededly formalistic and somewhat circular analysis with respect to § 28–33–18.2 (although an earlier version) and concluded that it is remedial and procedural in nature. *See Wayland Health Center v. Lowe,* 475 A.2d 1037, 1041 (R.I.1984). In light of the legislative directive regarding "procedural" provisions of the public law and the fact that the amendments to § 28–33–18.2 were not specifically enumerated among the amendments that would apply only prospectively, we conclude that we must apply the amended version of the statute. (Parenthetically we note that the two versions would not guide us through a substantially different analysis or, more importantly, lead us to opposite conclusions.)

Pion argues that the Appellate Division erred in its application and interpretation of § 28–33–18.2 and that the statutory elements were met. Relying in part on the dissenting opinion, he contends that the statute provides a twofold definition of suitable alternative employment in subsection (7) of § 28–29–2 (which was not amended by P.L.1992, ch. 31): "employment, or an actual offer of employment." He claims that the second means by which suitable alternative employment can arise under § 28–33–18.2 applies here: "as agreed to by the employee and employer with written notice to the director." Pion argues that although he did initially return to work unsuccessfully, this did not bar Bess Eaton and him from agreeing to "suitable alternative employment."

Specifically with regard to the elements, he contends that Bess Eaton offered him the position of traveling manager after he returned with a note from his doctor advising him to perform light duty only and that the performance of a new position was by mutual assent. He maintains that the traveling-manager position was *suitable* to his physical limitations in accordance with his physician's conclusion that he could perform light work, given his undisputed ability to perform those duties. In support of his view that the position was *alternate,* he points to the limited-duty letter that he had to sign before beginning work as a traveling manager. He contrasts the original store-manager position, which involved much bending and lifting, with the traveling-manager position, which required no lifting. He argues that the evidence to this effect that was adduced at trial supports a finding that this was alternate, that is, that "there was a fundamental change in his duties and responsibilities," despite the lack of a change in his title.

Bess Eaton argues that the Appellate Division did not err in its interpretation of suitable alternative employment. It contends that Pion's return to work at modified duties was insufficient to create suitable alternative employment as set forth in § 28–33–18.2. Bess Eaton maintains that Pion incorrectly argues that agreement by the parties to the modified job suffices to meet the statute's requirements and claims that Pion overlooked the clear statutory mandate that written notice be given to the director of labor. Bess Eaton also contends that Pion is not entitled to a finding of suitable alternative employment because under the WCA he had

regained his earning capacity and was no longer disabled; to find suitable alternative employment here, Bess Eaton states, "would effectively destroy" the earning-capacity principle. Bess Eaton also maintains that the trial judge's finding that Pion was not entitled to a finding of suitable alternative employment did not leave him unprotected or without remedy.

Our case law furnishes little guidance on this issue. In three of the four cases in which this court has construed a version of § 28-33-18.2, the employee had allegedly or in fact refused an offer of suitable alternative employment. *See Worcester Textile v. McIntosh,* 593 A.2d 70, 72-73 (R.I.1991); *Oladapo v. Charlesgate Nursing Corp.,* 590 A.2d 405, 406-07 (R.I.1991); *G.W. Dahl Co.,* 537 A.2d at 124-25. In the fourth case, this court held that to establish earning capacity, an employee must actually receive an offer of suitable alternative employment, which the employee in that case had not received. *See Wayland Health Center,* 475 A.2d at 1038-41.

■ Applying the amended, currently effective version of this statute, we first discuss a procedural argument that we find dispositive. Subsection (a) of § 28-33-18.2 states: "When an employee has sustained an injury which entitles the employee to receive benefits pursuant to sections 28-33-18 or 28-34-3 the employee may become capable of suitable alternative employment as determined by the workers' compensation court, or may be offered suitable alternative employment as agreed to by the employee and employer with written notice to the director."

According to § 28-29-2(8), the director to be notified is the director of labor.

Assuming without deciding that Pion has met the statutory elements that he claims to have satisfied—mutual assent, suitability, and alternateness—he fails to assert that he complied with the statutory requirement of notice to the director of labor. Pion does not claim that he or Bess Eaton submitted written notice to the director of labor concerning any agreement that they may. have made regarding suitable alternative employment, although he quotes the statutory language mandating notice to the director at least twice. The first time is when he quotes all of subsection (a). The second time, he quotes just a few words and emphasizes "notice to" to dispute the trial judge's statement that an agreement between the parties must be "approved" by the director of labor. In his discussion of why his case satisfies the statutory elements, he fails to include an argument regarding compliance with the notice requirement.[2]

Bess Eaton argues that Pion overlooked the clear statutory notice mandate and that the Legislature did not intend agreement between the parties to suffice for the creation of suitable alternative employment. The trial judge misstated the requirement by referring to approval by, rather than notice to, the director of labor when he presented his interpretation of the methods by which suitable alternative employment might be established. He did not, however, apply this provision to the facts in this case. The Appellate Division did not specifically address this provision either. Furthermore, nothing in the record indicates that any of the parties gave written notice to the director of labor.

Consequently, even assuming *arguendo* that Pion correctly asserts that he and Bess Eaton agreed and that the employment was suitable and alternate, he fails to establish the crucial notice element. We therefore agree with the Appellate Division's conclusion that the section "sets out the requirements for establishing suitable alternative employment, and compliance with same is the only way in which to establish this form

---

2. Pion approvingly cites the *Anthony & Associates* opinion, issued by the Appellate Division in 1991, as support for his contentions. The facts are similar to those in this case. A few months after the employee had sustained a work-related injury, the employee called the employer and stated that his physician had advised him that he could perform light work. The employee expressed interest in returning to light-duty or part-

time work with the employer. He did return to less strenuous work, and his postinjury earnings exceeded his preinjury average weekly wage.

The Appellate Division concluded that this situation involved suitable alternative employment. The Appellate Division did not, however, discuss the notice requirement. Therefore, this case is inapposite to our legal analysis.

of employment." We also conclude that Pion has not met these statutory requirements and that this is dispositive. We therefore do not reach the Appellate Division's reasons or the remaining arguments.

We address one further consideration. It is understandable why Pion seeks the protection afforded by the suitable-alternative-employment statute. In his brief, he states that the Legislature provided the employee with a "safe haven" in subsection (d) of § 28–33–18.2, which provides in pertinent part:

> "If the suitable alternative employment is terminated by the employer for reasons other than misconduct by the employee, the injured employee shall be entitled to be compensated from the employer in whose employ he or she was injured at the rate to which the employee was entitled prior to acceptance of such employment after notice by the employee to said employer in whose employ he or she was injured."

Pion claims that if he competently performs his job helping "problem stores," Bess Eaton's need for his services may diminish. He asserts that he "finds himself between the proverbial rock and a hard place," as he cannot return to his original job because he remains partially incapacitated but he also has not been found eligible for the protection of § 28–33–18.2(d) should he be terminated by Bess Eaton. Although we sympathize with Pion's fear of losing his job, unfortunately we are constrained to hold that the suitable-alternative-employment statute does not afford him the protection he seeks in these circumstances.

For the reasons stated, the petition for certiorari is denied. The writ heretofore issued is quashed, and the case is remanded to the Appellate Division with the court's decision endorsed thereon.