Frances RIFFENBURG

v.

KENT COUNTY MEMORIAL
HOSPITAL.

No. 97–30–M.P.

Supreme Court of Rhode Island.

July 21, 1998.

Lane W. Newquist, Greenwich, for plaintiff.

Mark McKenney, Providence, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court on May 12, 1998, pursuant to an order directing both parties to appear and to show cause why the issues raised by this petition should not be summarily decided. The petitioner, Frances Riffenburg (Riffenburg), seeks review of a final decree of the Workers' Compensation Court Appellate Division (Appellate Division). After reviewing the parties' memoranda and considering counsels' arguments, we are of the opinion that cause has not been shown and we shall proceed to decide the merits of the case at this time. The facts insofar as are pertinent are as follows.

On June 30, 1992, Riffenburg, who was employed as a delivery-room nurse at Kent County Memorial Hospital (hospital), sustained a work-related injury to her lower back and to her right knee. The injury was ultimately determined to be a permanent partial incapacity. As a result Riffenburg was unable to continue working and began receiving workers' compensation benefits.

On three separate occasions following her injury, Riffenburg attempted unsuccessfully to return to light duty in the delivery room. Seeking some other suitable position, she contacted the hospital and was placed in the hospital's medical records department, where she began working at a computer. This effort to return to work, however, was equally unsuccessful because working at the computer for long periods caused her leg to go numb. Finally, on March 14, 1994, Riffenburg was given a position as a x-ray healthcare nurse-provider, a position that was created specifically for her and was suited to her physical limitations. It is significant that the salary commensurate with this new position exceeded her preinjury salary, and the physical requirements of the position differed from those of her preinjury position.

In July of 1994 Riffenburg requested acknowledgment from the hospital that her new position as a x-ray health-care nurse constituted "suitable alternative employment" (SAE) as that term is defined in G.L. 1956 § 28–29–2(10) of the Workers' Compensation Act (act).[1] This acknowledgment would qualify Riffenburg for certain statutory protections under the act if her employment was terminated. See § 28–33–18.2(d). The hospital, however, declined this request. As a result, on December 9, 1994, Riffenburg forwarded her own § 28–33–18.2 notice to the State Director of Labor (director), indicating that despite the hospital's refusal to so

acknowledge, she had accepted SAE as of March 14, 1994.

On January 20, 1995, Riffenburg filed a petition to review with the Workers' Compensation Court, seeking a judicial determination to this effect.[2] A hearing was conducted on the petition. The trial judge subsequently granted the petition, noting that all the elements of SAE, as enumerated by this Court in *Pion v. Bess Eaton Donuts Flour Co.*, 637 A.2d 367 (R.I.1994), were present in the instant case. The hospital appealed this decision, and the Appellate Division reversed, holding that one of the essential elements of SAE listed in *Pion*, the mutual assent of both employer and employee to SAE status, was in fact absent and the petition should therefore have been denied. Therefrom Riffenburg filed a petition for writ of certiorari with this Court, which we granted.

In her petition Riffenburg argues that all the essential elements of SAE as prescribed in *Pion* are present in that she returned to alternative employment at the hospital, the employment was suitable in light of her physical restrictions, the required notice was sent to the director, and both employer and employee mutually assented to the employment. The hospital asserts, however, that the mutual assent required by the statute is not assent to an employee's return to a different job but rather assent to classification of that job as SAE. We disagree.

 In *Pion* this Court had occasion to review the elements necessary to establish SAE and determined that pursuant to § 28–33–18.2, an employee who sought characterization of his or her post injury employment as SAE had to demonstrate mutual assent, suitability, alternateness, and notice to the director. 637 A.2d at 372. Subsection (a) of § 28–33–18.2 provides:

---

1. General Laws 1956 § 28–29–2(10) defines suitable alternative employment as "employment or an actual offer of employment which the employee is physically able to perform and will not exacerbate the employee's health condition and which bears a reasonable relationship to the employee's qualifications, background, education, and training. The employee's age alone shall not be considered in determining the suitableness of the alternative employment."

2. The hospital also filed a petition to review, and sought to suspend Riffenburg's benefits in light of the fact that she had returned to work at a pay exceeding her preinjury wage. However, this petition, which was granted, is not presently before the Court.

"When an employee has sustained an injury which entitles the employee to receive benefits pursuant to § 28–33–18 or 28–34–3, the employee may become capable of suitable alternative employment *as determined by the workers' compensation court,* or may be offered suitable alternative employment *as agreed to by the employee and employer with written notice to the director.*" (Emphases added.)

Review of the statute makes clear that there are two ways in which an employee can become qualified for SAE, only one of which requires the mutual assent of the employer and the employee. Accordingly we conclude that the "mutual assent" referred to in *Pion* concerns an offer by the employer and an acceptance by the employee to return to work that is different from his or her preinjury employment. Furthermore, consistent with our decision in *Oladapo v. Charlesgate Nursing Corp.,* 590 A.2d 405 (R.I.1991), we conclude that when an employer offers employment to an injured employee but refuses to characterize it as SAE, he or she "does so at the peril that the WCC will later deem the offered position to be suitable." *Id.* at 407.

 In this case the hospital agreed to Riffenburg's return to employment as a x-ray health-care nurse-provider and thus satisfied the mutual assent component. The position was alternate because it was different from her preinjury employment and it was suitable because its physical requirements were compatible with the restrictions set by Riffenburg's treating physician. Finally, the notice requirement was satisfied by virtue of Riffenburg's notice to the director. Accordingly we hold that on the basis of the record before us Riffenburg satisfied all the statutory requirements necessary to qualify for SAE, and it was error for the Appellate Division to hold otherwise.

 Last, we note that contrary to the hospital's assertions, the fact that Riffenburg has regained her preinjury earning capacity and the fact that her workers' compensation benefits have been suspended have no affect on her ability to qualify for SAE. The purpose of § 28–33–18.2, as was noted by the Appellate Division, is to "facilitate a return to employment by the partially disabled employee." *See Oladapo,* 590 A.2d at 407; *G.W. Dahl Co. v. Wilson,* 537 A.2d 123, 125 (R.I. 1988). We deem it inconsistent with the purposes of the act, and the benefits of SAE characterization, to penalize any employee who makes an honest attempt to resume gainful employment.

For the foregoing reasons we grant the petition for certiorari and quash the decree of the Appellate Division. The papers of the case may be remanded to the Workers' Compensation Court with our decision endorsed thereon.