David **GREGSON**

v.

**PACKINGS & INSULATIONS CORPORATION et al.**

**No. 96–597–M.P.**

Supreme Court of Rhode Island.

March 4, 1998.

John D. Deacon, Jr., Providence, for Plaintiff.

Paul F. Bailargeon, for Defendants.

Before WEISBERGER, C.J., and LEDERBERG, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the petition for certiorari of three related Rhode Island corporations (petitioners) that sought review of a Superior Court order compelling them to allow the respondent, David Gregson, a stockholder in the corporations, to examine the petitioners' "books and records." For the reasons set forth below, we grant the petition in part and deny it in part. The facts insofar as they are pertinent to the petition follow.

### Facts and Procedural History

This case stems from a family feud that spilled over from the boardroom to the courtroom.[1] The Gregson family owns three local corporations, namely, Packings & Insulations Corporation (P & I), PIC Contractors, Inc., and MADAST Corporation (collectively Packings), that supply industrial packing and insulation materials. The respondent owns approximately one quarter of the stock of Packings; the remaining shares are owned by respondent's parents and two brothers. On December 14, 1995, the P & I board of directors fired respondent, who at that time was the company's president, treasurer, and general manager. The respondent's dismissal came in response to a number of transgressions that he allegedly had committed over the course of the prior two years. The allegations of wrongdoing included charges that respondent had awarded himself unauthorized bonuses in 1994 and had shirked his management duties following the board's earlier effort to limit his power and compensation. At the time of the firing, P & I also demanded that respondent return various corporate records, including confidential commercial information, that he allegedly had taken with him when he left the family business and started a competing enterprise, Gregson Industrial Supply, Inc. (GIS).

The various charges and countercharges between respondent and Packings resulted in three separate lawsuits. The first was an action by respondent against Packings and

---

1. Because an evidentiary hearing has yet to be conducted in this case, we have gleaned these facts from the pleadings and the representations of the attorneys at the October 16, 1996 hearing on respondent's motion to compel.

his family (in their capacity as shareholders) alleging wrongful conduct under G.L.1956 § 7–1.1–90 and seeking the liquidation of the three corporations. The second was a suit by P & I against respondent and GIS for respondent's alleged misconduct and removal of confidential information while employed at P & I. In the third suit, PIC Contractors, Inc., brought an action in replevin against respondent for his alleged refusal to return a company backhoe and other property. On or about March 5, 1996, in the course of respondent's suit against Packings, the parties agreed to a restraining order precluding Packings from making any financial distributions other than those in the ordinary course of business unless respondent's counsel first agreed to such a distribution or unless the court authorized it. The particular facet of the feud currently before us arose out of Packings' proposal to make such a distribution.

In a July 15, 1996 letter to respondent's counsel, Packings' attorney sought respondent's consent to a bonus distribution to shareholders (including respondent). The respondent's attorney replied, in a letter dated July 19, 1996, that his consent would have to be withheld until his client had the opportunity to inspect Packings' "interim financial records through June 30, 1996," and the counsel asked that these records be made available for inspection by respondent's accountant "forthwith." The respondent's counsel reiterated his client's wish to review Packings' financial records in a second letter dated August 2, 1996. Packings' attorney did not communicate with respondent's counsel about the request until August 21 when he informed respondent's counsel via letter that Packings compiled their financial records only on an annual basis, that "to compile interim financial data at this point would involve substantial and unnecessary duplication of effort and expense," and that such records would be made available to respondent around September 30 when they were ordinarily produced.

Evidently unsatisfied with this offer, respondent filed a motion on September 20, 1996, to compel production of these records and for assessment of a penalty pursuant to

G.L.1956 § 7–1.1–46(c). A justice of the Superior Court presided at a hearing on the motion on October 16, 1996, and entered an order that permitted respondent "to examine the books and records of Packings & Insulations Corporation, PIC Contractors, Inc., and MADAST Corporation, either together with his accountant and/or attorney, acting singly or in concert therewith, at any reasonable times as he may determine." The hearing justice also found that Packings had denied respondent access to Packings' records in violation of § 7–1.1–46(c) but deferred the motion for assessment of a penalty until the trial. After the Superior Court granted respondent's motion to compel, Packings filed motions in the Superior Court to reconsider and vacate the order. After the denial of those motions, Packings filed this petition for certiorari.

## Standard of Review

▇ This Court limits its review on certiorari " 'to examining the record to determine if an error of law has been committed.' " *City of Providence v. S & J 351, Inc.*, 693 A.2d 665, 667 (R.I.1997) (per curiam). "We do not weigh the evidence presented below, but rather inspect the record to determine if any legally competent evidence exists therein to support the findings made by the trial justice." *Id.* (citing *Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire*, 637 A.2d 1047, 1049 (R.I.1994)).

## Statutory Right to Inspection

▇ Since the passage of the Rhode Island Business Corporation Act in 1969, stockholders in this state have had a statutory right to inspect corporate records. *See Sarni v. Meloccaro*, 113 R.I. 630, 638 n. 2, 324 A.2d 648, 652 n. 2 (1974). Section 7–1.1–46 provides, inter alia, that

"(b) Any person who shall have been a shareholder of record or of voting trust certificates therefor for at least six (6) months immediately preceding his or her demand or who shall be the holder of record of, or the holder of record of voting trust certificates for, at least five percent (5%) of all the outstanding shares of a corporation, upon written demand stating

the purpose thereof, shall have the right to examine, in person, or by agent or attorney, at any reasonable time or times, for any proper purpose, its relevant books and records of account, minutes, and record of shareholders and to make extracts therefrom.

"(c) Any officer or agent who, or a corporation which, shall refuse to allow any shareholder or holder of voting trust certificates, or his or her agent or attorney, so to examine and make extracts from its books and records of account, minutes, and record of shareholders, for any proper purpose, shall be liable to the shareholder or holder of voting trust certificates in a penalty of ten percent (10%) of the value of the shares owned by the shareholder, or in respect of which the voting trust certificates are issued, in addition to any other damages or remedy afforded him or her by law. It shall be a defense to any action for penalties under this section that the person suing therefor has * * * improperly used any information secured through any prior examination of the books and records of account, or minutes, or record of shareholders, or of holders of voting trust certificates for shares of the corporation or any other corporation, or was not acting in good faith or for a proper purpose in making his or her demand."

Under these provisions, respondent clearly has a right to inspect Packings' books, records, and accounts. This right is not unfettered, however. The statute specifies that "relevant books and records of account, minutes, and record of shareholders" shall be made available "for any proper purpose." The statute further requires that a shareholder make a "written demand stating the purpose thereof" when invoking the statutory right to inspect a corporation's books.

■ In his July 19 letter to Packings' attorney, respondent's counsel requested that Packings' "interim financial records" be made available "in order to properly evaluate any bonus/dividend distribution." This stated purpose was clearly proper, and the hearing justice was correct in ordering that respondent be granted access to Packings' relevant financial books and records. The order issued by the Superior Court, however, was not sufficiently circumscribed in delineating the corporate records that respondent is entitled to inspect. The respondent is clearly entitled to review Packings' records of salaries and expenses and any other financial information relevant to an assessment of the propriety of making a dividend distribution. The respondent is not entitled, however, to review any proprietary information such as customer and supplier lists, information on contract bids, or information on profit margins and discounts.

At the hearing on the motion to compel production, Packings' attorney explained Packings' concerns about the scope of respondent's demand in light of the fact that GIS and Packings were "competing vigorously with one another in the marketplace, in the same business, in the same geographical area, for the same customers, using the same supplier." It is our opinion that Packings adequately complied with our instructions in *Long v. Atlantic PBS, Inc.*, 681 A.2d 249, 255 (R.I.1996), because it presented its "legitimate concerns that [it] may have had about [respondent's] good faith, the propriety of the purposes for his demand, or his potential misuse of such records to [Packings'] competitive detriment * * * to [the] court for its consideration and possible entry of a protective order concerning such activity." Having been presented with Packings' legitimate concerns, the hearing justice correctly granted respondent access to the information, but he neglected to restrict his order to confine respondent's access to only those financial records necessary to respondent's evaluation of the proposed dividend distribution without compromising Packings' proprietary information to its competitive detriment.

### Statutory Penalty

■ We are of the opinion that prior to assessing a statutory penalty under § 7–1.1–46(c), an evidentiary hearing at which the statutory defenses might be raised should be held to determine whether statutory access was denied. In this case the hearing justice found that there had been a "denial of access to the Plaintiff, David Gregson, of the books and records of said corporations" in violation

of the statute. The justice stated that the "[m]otion for assessment of a penalty of ten percent (10%) of the corporate shares owned by David Gregson in accordance with 7–1.1–46(c) shall be deferred to the trial judge for determination and imposition of said penalty and/or sanctions." In their briefs and at oral argument before this Court, the parties disagreed over the meaning of this part of the order. Packings contended that the order deferred to the trial justice only the issue of the valuation of respondent's stock in Packings and the calculation of the amount of the penalty, but not the question of whether a penalty would be imposed. Buttressed by this interpretation, Packings argued vigorously that the hearing justice had erred in finding a statutory denial of access. The respondent, in contrast, argued that the order deferred to the trial justice the determination of whether a penalty would in fact be imposed. According to respondent, Packings is complaining about a problem that does not exist.

We need not resolve this particular dispute, however, because in our opinion the alleged denial of access was not sufficiently established to warrant the statutory penalty in the circumstances of this case. In his letter to respondent's counsel Packings' attorney did not refuse to allow respondent to examine the records; rather, he indicated that the requested information would be available when Packings' fiscal year ended, approximately six weeks later. In any given case such a delay may or may not constitute a denial of access depending on a number of factors, such as the purpose of a shareholder's demand and the nature of the information requested. Not having heard from respondent to the contrary, Packings fairly assumed, on the basis of respondent's articulated purpose and the type of information he demanded, that respondent had no objection to the delay. Packings' first notice that the delay was unacceptable to respondent came with respondent's filing of his motion to compel. On the facts of the limited record before us, it is our opinion that respondent did not adequately show that Packings had refused his request in violation of the statute. Accordingly, we conclude that the penalty provisions of the statute are inapplicable to the current case.

For the foregoing reasons we grant the petition for certiorari in part and deny it in part as follows. The order of the hearing justice is affirmed insofar as it granted the respondent access to Packings' records of salaries, expenses, and other financial information relevant to the respondent's assessment of the proposed dividend distribution, but the respondent is denied access to such proprietary information as customer and supplier lists, contract bids, or profit margins and discounts. We reverse the finding that the respondent had been denied access, thereby triggering the penalty provision of § 7–1.1–46(c). The papers in this case are remanded to the Superior Court for entry of an order in accordance with this opinion.

BOURCIER, J., did not participate.