Karyn MUMMA

v.

CUMBERLAND FARMS, INC.

No. 2007–112–M.P.

Supreme Court of Rhode Island.

March 9, 2009.

Bernard P. Healy, Esq., Providence, for Plaintiff.

Michael S. Schwartz, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

This case came before the Supreme Court on Karyn Mumma's petition for issuance of a writ of certiorari to review a final decree of the Appellate Division of the Workers' Compensation Court (Appellate Division). The Appellate Division had affirmed a trial judge's decision denying Ms. Mumma's petition to reinstate the benefits she had been receiving as a result of her suitable alternative employment with her employer, Cumberland Farms, Inc. (Cumberland Farms). We entertained oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not be summarily decided. After examining the written and oral submissions of the parties, we are of the opinion that further briefing or argument is unnecessary. For the reasons set forth below, we affirm the final decree of the Appellate Division.

## I

### Facts and Procedural History

The parties stipulated to all facts pertinent to this matter. Ms. Mumma suffered an injury during the course of her employment as a store manager with Cumberland Farms on April 22, 1999. Based on a memorandum of agreement the parties executed on December 6, 1999, Ms. Mumma began receiving weekly workers' compensation benefits for her partial incapacity.[1] On February 8, 2001, Cumberland Farms offered Ms. Mumma "suitable alternative employment," as defined in G.L.1956 § 28–29–2(10), that was "closely tailored to meet [Ms. Mumma's] medical restrictions."[2] The letter, tracking the language of G.L. 1956 § 28–33–18.2(b), specifically assured Ms. Mumma that "[a]cceptance of this employment will not result in an inequitable forfeiture or loss of any benefits you accrued as an employee with the [c]ompany."[3] Ms. Mumma accepted Cumberland

1. General Laws 1956 § 28–33–18 provides in pertinent part:

 "(a) While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to seventy-five percent (75%) of the difference between his or her spendable average weekly base wages, earnings, or salary before the injury as computed pursuant to the provisions of § 28–38–20, and his or her spendable weekly wages, earnings, salary, or earnings capacity after that, but not more than the maximum weekly compensation rate for total incapacity as set forth in § 28–33–17. The provisions of this section are subject to the provisions of § 28–33–18.2.

 "(b) For all injuries occurring on or after September 1, 1990, where an employee's condition has reached maximum medical improvement and the incapacity for work resulting from the injury is partial, while the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to seventy percent (70%) of the weekly compensation rate as set forth in subsec-

 tion (a) of this section. The court may, in its discretion, take into consideration the performance of the employee's duty to actively seek employment in scheduling the implementation of the reduction. The provisions of this subsection are subject to the provisions of § 28–33–18.2."

2. General Laws 1956 § 28–29–2(10) provides:

 "'Suitable alternative employment' means employment or an actual offer of employment which the employee is physically able to perform and will not exacerbate the employee's health condition and which bears a reasonable relationship to the employee's qualifications, background, education, and training. The employee's age alone shall not be considered in determining the suitableness of the alternative employment."

3. Section 28–33–18.2 provides:

 "(a) When an employee has sustained an injury which entitles the employee to receive benefits pursuant to § 28–33–18 or 28–34–3, the employee may become capa-

Farms' offer, and on July 13, 2001, a trial judge entered a consent decree recognizing Ms. Mumma's new position as "suitable alternative employment."

The parties agreed that Ms. Mumma "fully and faithfully perform[ed] all job duties" related to this position. On September 22, 2005, however, Cumberland Farms informed Ms. Mumma of a substantial change in her employment that would be implemented on October 24, 2005. Ref-erencing Ms. Mumma's continued inability to work a forty-hour workweek, her employment status was to be reclassified as part-time, which effectively terminated her health insurance, vacation pay, and pension benefits. Both parties also agree that by that time, Ms. Mumma had received 312 weeks of partial compensation and, therefore, no longer was entitled to weekly compensation benefits under §§ 28–33–18 or 28–33–18.3.[4]

---

ble of suitable alternative employment as determined by the workers' compensation court, or may be offered suitable alternative employment as agreed to by the employee and employer with written notice to the director. The employer or insurer shall pay an injured employee that accepts suitable alternative employment a weekly compensation equal to sixty-six and two-thirds percent (66⅔%) of the difference between the employee's average weekly wage, earnings or salary before the injury and his or her weekly wages, earnings or salary from the suitable alternative employment.

"(b) The acceptance of suitable alternative employment shall not be mandatory if it results in the inequitable forfeiture or loss of seniority with the employer or a monetary benefit or other substantial benefit including, but not limited to, vested pension and/or profit sharing contributions, arising from the employment relationship.

"(c) If suitable alternative employment as determined by the workers' compensation court has been offered to the employee and the employee has refused to accept the employment, then the workers' compensation court shall, in fixing the amount of compensation payable subsequent to the refusal, treat earnings capacity as post injury earnings, requiring the employer or insurer to pay the injured employee a weekly compensation equal to sixty-six and two-thirds percent (66⅔%) of the difference between the employee's average weekly wage, earnings, or salary before the injury and the weekly earning capacity. In no case shall increases in payments made to an injured employee pursuant to § 28–33–18.3(b)(1) or 28–33–17(f) be considered in the calculation of the weekly compensation due pursuant to this section. The fact that the employee is undergoing rehabilitation does not by itself exempt the employee from the provisions of this subsection.

"(d) If the suitable alternative employment is terminated by the employer for reasons other than misconduct by the employee, the injured employee shall be entitled to be compensated from the employer in whose employ he or she was injured at the rate to which the employee was entitled prior to acceptance of the employment after notice by the employee to the employer in whose employ he or she was injured. The payments shall be made no later than fourteen (14) days after the notice. If suitable alternative employment is terminated by the employer for misconduct of the employee, or by the employee, the compensation payable to the employee shall not exceed that payable during continuance of suitable alternative employment. Upon request to the workers' compensation court, the employee shall have the right to a determination as to whether or not the termination was justified. Any employee who accepts suitable alternative employment with his or her employer of record shall continue to maintain the seniority status and all rights incidental to it that the employee enjoyed prior to his or her injury, except that these rights shall not exceed the current rights of a similar employee with equal seniority."

4. Section 28–33–18.3(a)(1) provides:
"For all injuries occurring on or after September 1, 1990, in those cases where the employee has received a notice of intention to terminate partial incapacity benefits pursuant to § 28–33–18, the employee or his or her duly authorized representative may file with the workers' compensation court a petition for continuation of benefits on forms prescribed by the workers' compensation court. In any proceeding before the workers' compensation court on a petition for

Ms. Mumma filed an "Employee's Petition to Determine a Controversy," seeking to restore the benefits she had been receiving by virtue of her "suitable alternative employment" position. A pretrial order denying her request for relief was entered, whereupon Ms. Mumma filed a timely claim for a trial. On April 11, 2006, after considering the parties' agreed statement of facts, joint exhibits, and written submissions, the trial judge issued a written decision. Noting that Ms. Mumma had received 312 weeks of partial disability benefits, the maximum allowable under § 28–33–18(d), the trial judge declined to extend the rights, protections, and benefits of "suitable alternative employment."[5] She reasoned that the benefits could not extend beyond the 312–week period because the "suitable alternative employment" language of § 28–33–18.2 specifically applies to workers who otherwise would receive benefits for partial disability under § 28–33–18.[6] The trial judge concluded

that when reading the two provisions together, an employee's right to "suitable alternative employment" terminates upon the expiration of her right to partial incapacity benefits.

Ms. Mumma appealed to the Appellate Division, which also found no merit to her claim. It noted that the statute specifically permits an employer to terminate a "suitable alternative employment" position during the 312–week period without incurring an obligation to continue any ancillary benefits of that position.[7] The Appellate Division declined to construe the statutes as granting an employee more rights after the 312–week period expired than she would have had if she had been terminated before that period expired. On March 22, 2007, a final decree affirming the trial judge's decision was entered. We granted Ms. Mumma's petition for writ of certiorari on January 31, 2008.

---

continuation of partial incapacity benefits, where the employee demonstrates by a fair preponderance of the evidence that his or her partial incapacity poses a material hindrance to obtaining employment suitable to his or her limitation, partial incapacity benefits shall continue. For injuries on and after July 1, 2001, 'material hindrance' is defined to include only compensable injuries causing a greater than sixty-five percent (65%) degree of functional impairment and/or disability. Any period of time for which the employee has received benefits for total incapacity shall not be included in the calculation of the three hundred and twelve (312) week period."

5. Section 28–33–18(d) provides:
"In the event partial compensation is paid, in no case shall the period covered by the compensation be greater than three hundred and twelve (312) weeks. In the event that compensation for partial disability is paid under this section for a period of three hundred and twelve (312) weeks, the employee's right to continuing weekly compensation benefits shall be determined pursuant to the terms of § 28–33–18.3. At least

twenty-six (26) weeks prior to the expiration of the period, the employer or insurer shall notify the employee and the director of its intention to terminate benefits at the expiration of three hundred and twelve (312) weeks and advise the employee of the right to apply for a continuation of benefits under the terms of § 28–33–18.3. In the event that the employer or insurer fails to notify the employee and the director as prescribed, the employer or insurer shall continue to pay benefits to the employee for a period equal to twenty-six (26) weeks after the date the notice is served on the employee and the director."

6. We note that the "suitable alternative employment" provisions of § 28–33–18.2(a) also apply to injured employees entitled to receive benefits under G.L.1956 § 28–34–3, pertaining to workers who contract certain occupational diseases.

7. The Appellate Division noted, however, that the employee still would be entitled to receive the full 312 weeks of partial-incapacity benefits.

Ms. Mumma contends that the Workers' Compensation Court erred in applying the § 28–33–18(d) 312–week limitation of compensation for partial disability to the "suitable alternative employment" provisions of § 28–33–18.2. She also argues that the Workers' Compensation Court erroneously applied amendments to § 28–33–18, enacted in 1990, limiting partial incapacity benefits to 312 weeks, to subsections (b) and (d) of § 28–33–18.2.

## II

### Standard of Review

 Upon a petition for certiorari, we review a decree of the Appellate Division for any error of law or equity pursuant to G.L.1956 § 28–35–30. *Rison v. Air Filter Systems, Inc.,* 707 A.2d 675, 678 (R.I.1998). Our review on certiorari "is limited to examining the record to determine if an error of law has been committed." *Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire,* 637 A.2d 1047, 1049 (R.I. 1994). "We do not weigh the evidence presented below, but rather inspect the record to determine if any legally competent evidence exists therein to support the findings made by the trial justice." *City of Providence v. S & J 351, Inc.,* 693 A.2d 665, 667 (R.I.1997); *see also Gregson v. Packings & Insulations Corp.,* 708 A.2d 533, 535 (R.I.1998).

 We review *de novo,* however, questions of statutory construction. *Rison,* 707 A.2d at 678. "As the final arbiter on questions of statutory construction, * * * 'this Court examines statutory provisions in their entirety, attributing to the act the meaning most consistent with the policies and purposes of the Legislature.'" *Commercial Union Insurance Co. v. Pelchat,* 727 A.2d 676, 681 (R.I.1999) (quoting *In re Advisory to the Governor (Judicial Nominating Commission),* 668 A.2d 1246, 1248 (R.I.1996)). "Although we must give words their plain and ordinary meanings, in so doing we must not construe a 'statute in a way that would * * * defeat the underlying purpose of the enactment.'" *Id.* (quoting *Matter of Falstaff Brewing Corp.,* 637 A.2d at 1050); *see also Davis v. Michigan Department of the Treasury,* 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

## III

### Discussion

 We discern no valid reason to disturb the Appellate Division's thorough and, in our opinion, statutorily correct treatment of the relationship between §§ 28–33–18 and 28–33–18.2. The purpose of suitable alternative employment is to "facilitate a return to employment by the partially disabled employee" by encouraging both employer and employee to enter such a mutually beneficial arrangement. *Riffenburg v. Kent County Memorial Hospital,* 715 A.2d 1281, 1283 (R.I.1998); *see Oladapo v. Charlesgate Nursing Corp.,* 590 A.2d 405, 407 (R.I.1991); *G.W. Dahl Co. v. Wilson,* 537 A.2d 123, 125 (R.I.1988). An employer otherwise obligated to pay partial incapacity benefits receives the benefit of the injured worker's productivity while the employee is able to maintain the dignity of gainful employment and any pre-injury incidental benefits of her position. Ms. Mumma contends that § 28–33–18.2 should be read as entirely distinct from § 28–33–18 and that the General Assembly's limitation of partial-incapacity benefits should have no effect on the parameters of the suitable alternative employment

provision.[8] We disagree.

Section 28–33–18(d) explicitly limits workers' compensation benefits for partial incapacity to 312 weeks. Subsections (a) and (b) of § 28–33–18, discussing the formula for calculating weekly partial incapacity benefits and for reducing those benefits once the worker has reached "maximum medical improvement" respectively, are both "subject to the provisions of § 28–33–18.2." Therefore, those subsections are effective unless the worker has accepted "suitable alternative employment," in which case those subsections have no force.

The "suitable alternative employment" provision, § 28–33–18.2, provides an alternative to employers who prefer not to simply disburse workers' compensation benefits to injured employees. It makes plain that an employee is under no obligation to accept alternative employment "if it results in the inequitable forfeiture or loss of seniority with the employer or a monetary benefit or other substantial benefit." Section 28–33–18.2(b). It also clearly recognizes that an employer occasionally will terminate an employee's suitable alternative employment, in which event the employee "shall be entitled to be compensated * * * at the rate to which the employee was entitled prior to acceptance of the employment * * *." Section 28–33–18.2(d). Such entitlement, however, derives from the provisions of either § 28–33–18(a) or § 28–33–18(b), and it thereby is subject to both the 312–week cap for the payment of partial incapacity benefits under § 28–33–18(d) and the provisions of § 28–33–18.3 concerning the continuation of partial incapacity benefits.

In the case under review, on October 24, 2005, Cumberland Farms modified the terms of Ms. Mumma's employment from full to part time, thus terminating her suitable alternative employment. As the Appellate Division noted, Cumberland Farms could have terminated her suitable alternative employment at any time under § 28–33–18.2(d). Ms. Mumma then would have been entitled to receive compensation, but no incidental benefits, under § 28–33–18 had she not already exhausted her partial incapacity benefits. Significantly, however, the parties stipulated that she had "received 312 weeks of partial compensation" and was "entitled to no further weekly compensation benefits under Sections 28–33–18.3 and 28–33–18 of the Workers' Compensation Act."

The language of § 28–33–18.2 does not require an employer to continue the terms of suitable alternative employment indefinitely. Moreover, we believe it would be contrary to the intention of the General Assembly to read § 28–33–18.2 as granting an employee whose suitable alternative employment is terminated after receiving 312 weeks of compensation for partial disability more rights than she would have if either the employer had never offered suitable alternative employment or if it had terminated her employment before the 312–week period had expired. Were we to accept Ms. Mumma's argument, we would upset the balance the General Assembly so carefully crafted, and we would likely stifle the willingness of employers to offer "suitable alternative employment." There would be little incentive for an employer to offer suitable alternative employment to an injured employee if by so doing it was committing itself to the payment of compensation, together with incidental benefits, for an indefinite period.

We recognize the seemingly harsh consequences with respect to this particular employee resulting from the statutory regime. Without question, Ms. Mumma

---

8. *See* P.L. 1990, ch. 332, art. IV, § 28.

faithfully performed all that was expected of her as a valued employee and all that was required of her under the terms of the "suitable alternative employment" consent decree. Then, after Cumberland Farms no longer was obligated to pay her compensation for partial disability, it changed her employment status from full time to part time, thereby making her ineligible for health insurance, vacation pay, and pension benefits. In this case, however, we agree with the trial judge and Appellate Division that Cumberland Farms no longer was obligated to provide Ms. Mumma with the rights, benefits, and protections afforded her under § 28–33–18.2. Her suitable alternative employment had been permissibly terminated, and by her own acknowledgment she no longer was entitled to receive weekly compensation benefits.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the final decree of the Appellate Division. The papers in the case shall be remanded to the Workers' Compensation Court.

Justice GOLDBERG, dissenting.

Because I am of the opinion that suitable alternative employment means employment that is neither make-work nor temporary and that is designed to preserve the employment relationship and the dignity of the injured worker, I respectfully dissent from the majority opinion in this case. I decline to show the gate to this worker, who did all that the law required of her, simply because she failed fully to recover from her work-related injury.

The term "suitable alternative employment," as set forth in the Workers' Compensation Act, is defined as "employment or an actual offer of employment which the employee is physically able to perform and will not exacerbate the employee's health condition and which bears a reasonable relationship to the employee's qualifications, background, education, and training." G.L.1956 § 28–29–2(10). An employee is eligible for suitable alternative employment when he or she has sustained an injury that entitles the employee to benefits pursuant to G.L.1956 § 28–33–18 (partial incapacity benefits) or G.L.1956 § 28–34–3 (benefits for an occupational disease) and the employee physically is capable of performing the work without risk to his or her health. Section 28–33–18.2(a). Significantly, the benefits calculation for an employee performing suitable alternative employment markedly differs from weekly benefits for partial incapacity and, in my opinion, has no relevance to partial incapacity benefits.

For partial incapacity, "the employer shall pay the injured employee a weekly compensation equal to seventy-five percent (75%) of the difference between his or her spendable average weekly base wages, earnings, or salary before the injury as computed pursuant to the provisions of § 28–38–20, and his or her spendable weekly wages, earnings, salary, or earnings capacity after [the injury] * * *." Section 28–33–18(a). Compensation benefits for an employee working in a suitable alternative employment position are different and are controlled by a separate section in the Workers' Compensation Act: "The employer or insurer shall pay an injured employee that accepts suitable alternative employment a weekly compensation equal to sixty-six and two-thirds percent (66 ⅔%) of the difference between the employee's average weekly wage, earnings or salary before the injury [pre-injury wages] and his or her weekly wages, earnings or salary from the suitable alternative employment." Section 28–33–18.2(a). No-

tably, there are situations in which the earnings for suitable alternative employment are equal to or in excess of the employee's pre-injury wages, and in those cases the employer's insurance carrier pays no compensation benefits. The holding in this case renders such an employee, who is not receiving any weekly benefits, subject to the 312–week gate. In my opinion, this is an absurd result that does nothing to further the salutary purpose of the state's workers' compensation scheme.

In my view, after an employee undertakes a position of suitable alternative employment, he or she is not subject to the provisions of § 28–33–18 because the employee, contrary to the conclusion of the majority, is no longer receiving weekly compensation for partial incapacity. Rather, the employee has accepted an offer of suitable alternative employment, a job that is appropriate to the worker and acceptable to the employer. The employment relationship and the compensation scheme that gave rise to that relationship is governed by the provisions of § 28–33–18.2, which has no provision that even remotely suggests that this employment will expire after 312 weeks. Indeed, the provision creating suitable alternative employment, § 28–33–18.2, is silent with respect to the 312–week gate for partial incapacity benefits, § 28–33–18(d), and makes no reference, whatsoever, to the cessation of benefits based on the passage of time.

A careful review of the statutory scheme and the interplay between benefits for partial incapacity and suitable alternative employment is instructive. Notably, § 28–33–18(b), the subsection that addresses maximum medical improvement for an employee receiving partial benefits and that requires a reduction in those benefits when an employee has reached maximum medical improvement, specifically is made subject to the provisions of § 28–33–18.2—

suitable alternative employment. That is not the case for § 28–33–18(d), the 312–week gate. In my opinion, the fact that suitable alternative employment is referred to in § 28–33–18(b) as it relates to maximum medical improvement, and not in the subsection under review in this case, § 28–33–18(d), is determinative of the issues before this Court. The fact that the provision on suitable alternative employment is included in subsection (b) of § 28–33–18 and omitted in subsection (d) of the same statute is, in my view, intentional and purposeful and demonstrates a legislative intent that the 312–week gate does not apply to a worker in a suitable alternative employment position. *See Orthopedic Specialists, Inc. v. Great Atlantic & Pacific Tea Co.,* 120 R.I. 378, 382, 388 A.2d 352, 354 (1978) (noting that when a statute such as the Workers' Compensation Act creates rights that were unknown at common law, the express statutory language that prescribes the rights and the beneficiaries of those rights is exclusive). This Court long has recognized that although the provisions of the Workers' Compensation Act are to be construed liberally to effectuate its remedial purpose, we may not engage in statutory interpretation that would distort the plain meaning of those provisions. *Id.* It is not the business of this Court to read subsections of one statute into another in the absence of a clear legislative intent to the contrary. Accordingly, I am of the opinion that, if the General Assembly intended to incorporate the 312–week gate into the provisions of suitable alternative employment, it would have done so within the confines of § 28–33–18(d) in the same manner as in § 28–33–18(b).

Additionally, in my opinion, partial incapacity benefits are not the statutory or functional equivalent of suitable alternative employment, and the 312–week gate does not, as the Appellate Division and the majority have declared, swing both ways. It

is undisputed that this worker had been receiving weekly compensation for partial incapacity based on § 28–33–18 until she returned to work in a suitable alternative employment position. The Workers' Compensation Court entered a decree whereby the parties agreed that Ms. Mumma's return to work "was to be considered a job offer of suitable alternative employment within the meaning of the Workers' Compensation Act." Thereafter, the parties stipulated that Ms. Mumma "fully and faithfully perform[ed] all job duties pursuant to the requirement of the suitable alternative employment position." In my view, once she accepted the offer of suitable alternative employment and returned to work, Ms. Mumma was not, as the majority concludes, "receiving weekly workers' compensation benefits for her partial incapacity." She was employed. I am of the belief that these terms are separate and distinct and do not overlap as applied in this case.

Moreover, the gate, as set forth in § 28–33–18(d), provides in relevant part that, "[i]n the event that compensation for partial disability is paid under this section for a period of three hundred and twelve (312) weeks, the employee's right to continuing weekly compensation benefits shall be determined pursuant to the terms of § 28–33–18.3." (Emphasis added.) At the time Ms. Mumma was deprived of her seniority, medical benefits, and vacation benefits, she was not receiving "compensation for partial disability * * * under [§ 28–33–18]"; she had a job, which she was fully and faithfully performing in accordance with the salutary purpose of the workers' compensation scheme. Accordingly, I am of the opinion that because she was not receiving weekly benefits for partial disability, she was not subject to the gate.

Furthermore, the trial judge and the Appellate Division overlooked and misconceived what actually transpired in this case and engaged in statutory gyrations in order to achieve their result. First, after 312 weeks, Ms. Mumma was informed that her job status changed and that she was reduced from full-time-employee status to part-time employment. According to the Appellate Division, this notification advised Ms. Mumma that "because she continued to be unable to work a full-time, forty (40) hour a week schedule, she was being reclassified as a part-time employee effective October 22, 2005." The Appellate Division noted that before this reclassification, "the employer had continued to provide the employee with the same level of employment benefits for which she was eligible as a full-time employee prior to her work-related injury." This, of course, is mandated by law: "Any employee who accepts suitable alternative employment with his or her employer of record shall continue to maintain the seniority status and all rights incidental to it that the employee enjoyed prior to his or her injury, except that these rights shall not exceed the current rights of a similar employee with equal seniority." Section 28–33–18.2(d). The Appellate Division ignored this provision and approved the reasoning of the trial judge that "because the employee was no longer entitled to receive weekly benefits for partial incapacity pursuant to * * * § 28–33–18, she was no longer eligible for suitable alternative employment[,]" and, based on this remarkable finding, Ms. Mumma "could not compel the employer to continue to provide the same employment benefits she enjoyed when she was in the suitable alternative employment position."

The Appellate Division found that because Ms. Mumma could have been terminated (which did not occur), there was "no reason why Ms. Mumma should be placed in any better position" than an employee who was terminated before the expiration of 312 weeks. The Appellate Division

found that "Cumberland Farms has effectively terminated the suitable alternative employment position, although it has not actually terminated Ms. Mumma's employment."

There is no provision in the Workers' Compensation Act that permits an employee to be "effectively terminated." I deem this conclusion to be erroneous as a matter of law. According to the Appellate Division, because "[t]he original job offer was significantly altered and [was] no longer the position that was deemed to be suitable alternative employment," the employer was no longer required to maintain "the incidental benefits of employment enjoyed prior to the work injury." Thus, Ms. Mumma, by the unilateral stroke of a pen, was placed "in the same position as any other employee who has had their suitable alternative employment position terminated by the employer."

In this case, both the trial judge and the Appellate Division improperly combined and incorporated specific parts of separate statutes to reach the result in this case. I am of the opinion that this decision is lacking in statutory support, is unjust, and is contrary to our settled principles respecting statutory construction. Consequently, I dissent and would quash the decree in this case.