**Supreme Court**

No. 2010-336-M.P.
(02-854)
(03-4052)

Robert E. Nichols                    :

v.                           :

R&D Construction Co., Inc.           :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Robert E. Nichols           :

v.                          :

R&D Construction Co., Inc.   :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.** Robert E. Nichols, aggrieved by a decision and final decree of the Appellate Division of the Workers' Compensation Court denying him partial incapacity benefits beyond the 312-week period provided by G.L. 1956 § 28-33-18.3, filed a petition for a writ of certiorari. In that petition, he pointed to two issues as meriting resolution by this Court—viz.: (1) whether or not an employee who has received 312 weeks of benefits pursuant to the workers' compensation statute may continue to receive those benefits as a result of the fact that he has failed to regain his former earning capacity; and (2) whether or not § 28-33-18(d) is constitutional.

The petition for certiorari having been granted, this case came before the Court for oral argument. For the reasons set forth in this opinion, we affirm the decision and final decree of the Appellate Division of the Workers' Compensation Court.

- 1 -

# I

## Facts and Travel

On December 26, 1995, Mr. Nichols was injured as a result of a fall from a roof while he was working for R&D Construction Co., Inc. He suffered an injury to the L1 disc in his spine; and, shortly thereafter, he began receiving disability benefits.[1] Several years later, Mr. Nichols was notified that his partial disability benefits would be terminated on July 17, 2003. It is Mr. Nichols's challenge to that termination of benefits that gave rise to this case.

## A

## The Proceedings Before the Workers' Compensation Court

On February 5, 2002, more than six years after the date of his injury, Mr. Nichols filed in the Workers' Compensation Court (WCC) a petition (W.C.C. 02-854) requesting continuation of benefits pursuant to § 28-33-18.3 and/or a finding that he was totally disabled pursuant to § 28-33-17(b)(2). Mr. Nichols later amended his petition to add a challenge to the constitutionality of § 28-33-18(d).

On March 20, 2002, a judge of the WCC denied the petition, and Mr. Nichols then requested a trial,[2] which commenced on January 6, 2003. The trial was held on six different dates, with the final date being October 24, 2005. Over the course of the trial, the trial judge

---

[1] A more complete history of the disability benefits received by Mr. Nichols is set forth in Section I A, infra.

[2] Mr. Nichols also filed a second petition (W.C.C. 03-4052), which was consolidated with his original petition for trial before the Workers' Compensation Court (WCC). However, in Mr. Nichols's petition for a writ of certiorari, he acknowledged that the issue raised in W.C.C. 03-4052 has since been passed upon by this Court in Mumma v. Cumberland Farms, Inc., 965 A.2d 437 (R.I. 2009); for that reason Mr. Nichols is no longer pressing that issue. Accordingly, the only issues now before this Court are those raised in W.C.C. 02-854.

heard testimony from Mr. Nichols, Diane Nichols (the wife of Mr. Nichols and president of R&D Construction), and Edmond Calandra (a vocational expert). In addition to the live testimony, the parties submitted numerous documentary exhibits.

## 1

### The Trial Evidence

At trial, a number of documents were submitted to the trial judge as exhibits evidencing the history of disability benefits received by Mr. Nichols. Among those documents was a memorandum of agreement, dated January 18, 1996, which established that the injury to Mr. Nichols's L1 disc on December 26, 1995 entitled him to total incapacity benefits as of December 27, 1995. A "Mutual Agreement" that was signed on October 16, 1996 indicates that Mr. Nichols's benefits were later modified from total to partial incapacity as of July 28, 1996. Pursuant to a suspension agreement and receipt signed on January 7, 1997, Mr. Nichols and R&D Construction agreed that weekly compensation benefits had ceased as of October 6, 1996. However, Mr. Nichols again became partially disabled; and the benefits associated with that disability are set forth in a second memorandum of agreement that was signed on May 23, 1997. The May 1997 memorandum of agreement indicates (1) that the previous total incapacity benefits had ended as of October 6, 1996 and (2) that Mr. Nichols was again entitled to temporary partial benefits as of January 13, 1997. Several years thereafter, Mr. Nichols was notified that his benefits would be terminated on July 17, 2003,[3] pursuant to the 312-week limit contained within § 28-33-18(d).

---

[3]     The employer sent notice to Mr. Nichols that his partial compensation benefits would be terminated, which notice prompted the filing of the petition in this case; but that original notice was sent approximately fourteen weeks earlier than required. Pursuant to an order of the WCC dated November 8, 2002, the employer was informed that the notice was invalid and the employer was directed to send an appropriate notice. The employer sent the appropriate notice

At his trial in the WCC, Mr. Nichols testified that, at the time of the injury that gave rise to this case (December 26, 1995), he had been employed on a forty-hour-a-week basis as a "working foreman" and vice president of R&D Construction, a family-run business of which his wife was president. He further testified that, in the months prior to his injury, R&D Construction had been engaged in doing renovations and additions and in constructing new homes and also in doing "a lot of roofing."

Mr. Nichols then proceeded to testify that, on December 26, 1995, he fell from a roof and landed in a parking lot. He further stated that the fall resulted in a fracture in his "low back" and that he was "out of work completely" from the date of the fall until July of 1996. At the time of his injury, he was earning $848.34 a week. Mr. Nichols testified that, after he resumed work in July of 1996, he returned to the "same position" at the company; but he added that his responsibilities were different. For example, he testified that he could not "do roofing" or "any heavy lifting," and he added that shoveling was a problem for him. He stated that, if he attempted doing the physical labor that he had performed prior to his injury, he "end[ed] up having to leave early." When Mr. Nichols was asked by counsel if there were any "arrangements" with the company that were available to him on days when he had back problems, he replied that he could leave the job site. He testified that he did not need "clearance" to leave for that reason, but he added that he usually called his wife to tell her that he was leaving.

Mr. Nichols testified that he worked as a Santa Claus for four to six weeks every December, beginning in approximately 2000. However, Mr. Nichols further testified that he had not pursued other employment or sought retraining.

---

on January 17, 2003, indicating that Mr. Nichols's benefits would terminate twenty-six weeks from that date—i.e., on July 17, 2003.

Mr. Edmond Calandra, a vocational consultant, also testified at the trial in the WCC. It was Mr. Calandra's testimony that, in his opinion, Mr. Nichols's partial incapacity posed a "material hindrance"[4] to his obtaining employment suitable to his limitations. Mr. Calandra based that opinion on what he characterized as Mr. Nichols's "employment arrangement" with his wife's company, which he said "really accommodate[d] his physical restrictions in a way that a structured employment environment, specifically in the construction trade, would not allow for."

On cross-examination, Mr. Calandra testified that he had reviewed documentation from Mr. Nichols's physicians, which indicated that Mr. Nichols had physical limitations. It also became apparent through Mr. Calandra's testimony that he had in his possession at trial only his report on Mr. Nichols; he testified that all of the materials that he had reviewed for the case had been destroyed or discarded.

**B**

**The Trial Judge's Decision**

The trial judge's decision was entered on December 21, 2005. Although it is clear from the decision that Mr. Nichols had raised four issues at the <u>nisi prius</u> stage, only two of those issues are relevant to this appeal—namely, (1) whether Mr. Nichols's incapacity poses a "material hindrance" to obtaining employment suitable to his limitations;[5] and (2) whether § 28-33-18 is unconstitutional. The trial judge ultimately found that Mr. Nichols had failed to prove

---

[4] The term "material hindrance" appears in G.L. 1956 § 28-33-18.3(a)(1)—a statute that we address in Section III A, <u>infra</u>.

[5] In actuality, the trial judge dealt first with the argument concerning the statute's alleged unconstitutionality and then turned to the "material hindrance" argument. However, in this opinion we shall first address the "material hindrance" issue; then, after our discussion of that purely statutory issue is complete, we shall turn to the constitutionality issue.

that he has a "material hindrance" to obtaining suitable employment or that § 28-33-18 is unconstitutional. The trial judge concluded her decision by ordering that the petition be denied and dismissed.

The trial judge quite unequivocally rejected Mr. Nichols's "material hindrance" argument. She stated that Mr. Nichols's "work history, wage records and medical reports do not support his material hindrance argument." She explained that Mr. Nichols "ha[d] worked fairly consistently" since August of 1996, and she noted that "his wage records indicate[d] a general increase in wages earned since returning to work following his injury." Additionally, she observed that Mr. Nichols had not sought other employment (aside from his seasonal work as a Santa Claus), nor had he sought retraining. The trial judge relied on the medical reports from two of Mr. Nichols's physicians, which indicated that Mr. Nichols was doing well and that his back symptoms were stable. Notably, the trial judge rejected the opinion of the vocational expert, Mr. Calandra, with respect to the "material hindrance" issue. She based that rejection on a number of factors—including the fact that Mr. Calandra had not been provided with some of the medical records prepared by Mr. Nichols's physicians and therefore could not take them into account. The trial judge also noted that the vocational expert, when asked by the court to provide his file, could not provide the file or any supporting documentation other than his final report on Mr. Nichols. Additionally, the trial judge explained that Mr. Nichols had not attempted to find other employment nor had he sought retraining; she also noted that he had "a relatively small whole person impairment rating." For these reasons, the trial judge found that Mr. Nichols had failed to establish that his disability posed a "material hindrance" to obtaining suitable employment.

The trial judge also dispatched of Mr. Nichols's constitutional challenge to § 28-33-18, noting that the Appellate Division of the WCC had previously addressed such a constitutional argument in McQuaide v. Westerly Health Center, W.C.C. 99-3252 (App. Div. 2000).[6] The trial judge noted that, in McQuaide, the Appellate Division had determined that "similarly situated employees were treated similarly and that there was a rational basis for the legislation."

## C

### The Appellate Division's Decision

Mr. Nichols thereafter claimed an appeal of the trial judge's decision to the Appellate Division of the WCC. The parties were ordered to appear before the Appellate Division on May 17, 2006 for oral argument;[7] and, on August 25, 2010, the Appellate Division filed a written decision affirming the decision of the trial judge. The Appellate Division's decision was entered on September 1, 2010.

The Appellate Division summarily dismissed Mr. Nichols's statutorily-based contention—viz., that his partial incapacity constituted a "material hindrance" to obtaining suitable employment. See § 28-33-18. The Appellate Division ruled that Mr. Nichols's statements on appeal to that body "lack[ed] the specificity required by [G.L. 1956 § 28-35-28(a)]" and that, therefore, Mr. Nichols's statutory argument did "not warrant consideration by the panel."

---

[6]     The remainder of the trial judge's decision addresses Mr. Nichols's other arguments raised at trial, none of which are at issue in this appeal.

[7]     Although the docket sheet attached to the WCC file contains an entry on May 17, 2006 with the description "ORAL ARGUMENT HEARD," no transcript of oral arguments before the Appellate Division has been filed with this Court; and any arguments that may have occurred on that date are not referenced in the Appellate Division's decision.

Even though the Appellate Division ruled that Mr. Nichols's "material hindrance" argument had not been presented in a procedurally proper manner, it nevertheless proceeded to address the merits of that argument, which the Appellate Division ultimately found to be unconvincing. The Appellate Division stated as follows:

> "[Section 28-33-18.3] makes no reference to the inability to regain one's earning capacity as the standard to qualify for continued benefits beyond 312 weeks. The evidence reveals that Mr. Nichols has minimal residual effects from his injury, he has been working forty (40) hours a week on a fairly consistent basis for years, and his earnings have fluctuated depending upon whether he works on a prevailing wage rate job and what his wife chooses to pay him."

Accordingly, the Appellate Division ruled that Mr. Nichols "ha[d] not established that his partial disability poses a material hindrance to obtaining suitable employment."

The Appellate Division summarily disposed of Mr. Nichols's constitutional argument, relying on its previous decision in McQuaide.

Mr. Nichols filed a petition for a writ of certiorari, seeking review by this Court of the Appellate Division's rulings.

**D**

**The Issues on Appeal**

This Court granted Mr. Nichols's petition for a writ of certiorari on May 26, 2011. At issue in this case is: (1) whether or not an employee who has received 312 weeks of benefits pursuant to the Workers' Compensation Act (G.L. 1956 chapters 29–38 of title 28) may continue to receive those benefits on the basis of the fact that he has failed to regain his earning capacity; and (2) whether or not § 28-33-18 is constitutional.

## II

## Standard of Review

Upon a petition for certiorari, this Court reviews a decision of the Appellate Division of the WCC pursuant to § 28-35-30, which reads as follows:

> "(a) Upon petition for certiorari, the supreme court may affirm, set aside, or modify any decree of the [Appellate Division of the WCC] only upon the following grounds:
>
>> "(1) That the workers' compensation court acted without or in excess of its authority;
>>
>> "(2) That the order, decree, or award was procured by fraud; or
>>
>> "(3) That the appellate division erred on questions of law or equity, the petitioner first having had his objections noted to any adverse rulings made during the progress of the hearing at the time the rulings were made, if made in open hearing and not otherwise of record.
>
> "(b) Review shall not be granted by the supreme court except as provided in this section, and the supreme court shall disregard any irregularity or error of the appellate division or trial judge unless it affirmatively appears that the petitioner was damaged by the irregularity or error."

In light of that statutory mandate, we review such a decision on certiorari for "any error of law or equity." See Mumma v. Cumberland Farms, Inc., 965 A.2d 437, 441 (R.I. 2009). In order to determine whether the decision has been made in error, "[w]e do not weigh the evidence presented below, but rather [we] inspect the record to determine if any legally competent evidence exists therein to support the findings made by the trial justice." City of Providence v. S & J 351, Inc., 693 A.2d 665, 667 (R.I. 1997); see also Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire, 637 A.2d 1047, 1049 (R.I. 1994) (stating that this Court's review on certiorari "is limited to examining the record to determine if an error of law has been committed").

We have clearly stated that "[t]his Court uses the greatest possible caution" when we are called upon to review the constitutionality of a statute. See State v. Faria, 947 A.2d 863, 867 (R.I. 2008) (internal quotation marks omitted). In this regard, "we begin with the principle that legislative enactments of the General Assembly are presumed to be valid and constitutional." See Moreau v. Flanders, 15 A.3d 565, 573 (R.I. 2011) (internal quotation marks omitted); see also Newport Court Club Associates v. Town Council of Middletown, 800 A.2d 405, 409 (R.I. 2002); Dowd v. Rayner, 655 A.2d 679, 681 (R.I. 1995). We will not declare a statute to be unconstitutional "unless we find it to be constitutionally defective beyond a reasonable doubt." See Moreau, 15 A.3d at 573; see also Gorham v. Robinson, 57 R.I. 1, 7, 186 A. 832, 837 (1936).

## III

## Analysis

## A

## Whether Mr. Nichols's Incapacity Poses a Material Hindrance

Mr. Nichols contends[8] that he should have continued to be entitled to partial incapacity benefits because his failure to regain his earning capacity constituted a "material hindrance" to

---

[8]     Initially, the Appellate Division did not consider Mr. Nichols's contention, which the Appellate Division characterized as a "general allegation[ ] that the trial judge erred in failing to find that he established his partial incapacity was a material hindrance to obtaining suitable employment," because the "statement[ ] clearly lack[ed] the specificity required by * * * [G.L. 1956] § 28-35-28(a) and pertinent case law." Mr. Nichols's reason of appeal with respect to this issue read as follows:

> "2.     The Trial Judge erred in determining that the petitioner/employee has failed to prove that he has a material hindrance to obtaining employment suitable to his limitations pursuant to R.I.G.L. § 28-33-18.3."

Neither party has raised this specificity issue on appeal. We have held that § 28-35-28 "requires that the party seeking review file reasons of appeal stating specifically all matters determined adversely to him [or her] which he [or she] desires to appeal." See Falvey v. Women and Infants

his finding employment suitable to his limitations within the meaning of § 28-33-18.3(a)(1). The Appellate Division rejected Mr. Nichols's "material hindrance" argument, which argument the Appellate Division paraphrased as follows: "[B]ecause [Mr. Nichols] is not regularly earning wages equal to his established average weekly wage, he has proven that his partial disability is a material hindrance." The Appellate Division based its rejection of that contention on the following grounds: (1) that the statute "makes no reference to the inability to regain one's earning capacity as the standard to qualify for continued benefits beyond 312 weeks;" (2) that Mr. Nichols had "minimal residual effects from his injury;" and (3) that Mr. Nichols consistently had been working 40 hours per week "for years" at fluctuating pay rates. Accordingly, the Appellate Division ruled that Mr. Nichols had not established that his disability posed a material hindrance to obtaining employment suitable to his limitations.

Section 28-33-18.3(a)(1), which makes reference to the "material hindrance" concept, reads, in pertinent part, as follows:

> "In any proceeding before the workers' compensation court on a petition for continuation of partial incapacity benefits, <u>where the employee demonstrates by a fair preponderance of the evidence that his or her partial incapacity poses a material hindrance to obtaining employment suitable to his or her limitation, partial incapacity benefits shall continue</u>." (Emphasis added.)

After a thorough review of the somewhat meandering record in this case, we are able to perceive nothing that would support Mr. Nichols's argument that he should be able to avail himself of the "material hindrance" exception that is set forth in § 28-33-18.3. It is clear, as the

Hospital, 584 A.2d 417, 419 (R.I. 1991) (alterations and emphasis in original) (internal quotation marks omitted); see also Bissonnette v. Federal Dairy Co., 472 A.2d 1223, 1225–26 (R.I. 1984) (dismissing the appeal because the employee disregarded the specificity requirements of §§ 28-35-28 and 28-35-29). We nonetheless reach Mr. Nichols's contention about "material hindrance" not only because neither party has addressed the Appellate Division's dismissal of the issue, but also because the Appellate Division subsequently commented on the underlying merits of Mr. Nichols's contention in its decision.

Appellate Division aptly noted, that the statute does not contemplate the "inability to regain one's earning capacity" as a basis for a "material hindrance." Instead, the statute requires that the partial disability itself must serve as a "material hindrance to obtaining employment suitable to his or her limitations" in order for benefits to continue. In this case, Mr. Nichols remained employed in a position which accommodated his limitations, and thus he did not meet his burden of proving that his incapacity posed a material hindrance to obtaining employment. Therefore, we hold that the Appellate Division did not err in affirming the trial judge's decision on the "material hindrance" issue.

**B**

**Constitutionality of § 28-33-18(d)**

Mr. Nichols contends that § 28-33-18(d) violates the equal protection clause of the Rhode Island Constitution, article 1, section 2. Mr. Nichols bases that contention on his view that the 312-week limit is "clearly arbitrary and bears no reasonable or rational relationship to a legitimate state interest." At the time of Mr. Nichols's injury, § 28-33-18(d) read as follows:

> "In the event partial compensation is paid, in no case shall the period covered by such compensation be greater than three hundred and twelve (312) weeks. In the event that compensation for partial disability is paid under this section for a period of three hundred and twelve (312) weeks, the employee's right to continuing weekly compensation benefits shall be determined pursuant to the terms of section 28-33-18.3. At least twenty-six (26) weeks prior to the expiration of said period, the employer or insurer shall notify the employee of its intention to terminate benefits at the expiration of three hundred and twelve (312) weeks and advise the employee of the right to apply for a continuation of benefits under the terms of section 28-33-18.3. In the event that the employer or insurer fails to notify the employee as prescribed above, the employer or insurer shall continue to pay benefits to the employee for a period equal to twenty-six (26) weeks after the date the notice is served on the employee." P.L. 1992, ch. 31, § 5.

In this case, where the statute has been challenged as being violative of our constitution's equal protection clause, we agree with the parties that the rational basis test is the appropriate standard of review because it is clear to us that § 28-33-18(d) neither infringes upon a fundamental right nor creates a suspect class. See Riley v. Rhode Island Department of Environmental Management, 941 A.2d 198, 211 (R.I. 2008) ("It is well settled that under the equal protection clause, legislative classifications that do not affect a fundamental right or a suspect class such as race, alienage, or national origin, are examined under a minimal-scrutiny analysis." (internal quotation marks omitted)). Under the rational basis test, we "merely determine[ ] whether the differential treatment bears a reasonable or rational relationship to a legitimate state interest." Boucher v. Sayeed, 459 A.2d 87, 91 (R.I. 1983); see also Moreau, 15 A.3d at 587; Mackie v. State, 936 A.2d 588, 595–96 (R.I. 2007). However, "the proper inquiry is not whether this Court can find a rational basis for the statute, but whether the General Assembly rationally could conclude that the legislation would solve a legitimate problem." Faria, 947 A.2d at 868 (internal quotation marks omitted).

After reviewing this Court's precedent in the equal protection domain and after considering the written and oral arguments of counsel, we see no reason to disturb the conclusions of the Appellate Division on this issue. Nor are we at all convinced that there is no rational basis for limiting the potentially infinite and burdensome duration of partial incapacity benefits. See, e.g., Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 314 (1976) ("This [rational basis] inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary."). Clearly, one rational basis for this legislative cap on benefits is so that the benefits

- 13 -

do not extend infinitely; instead, the cap promotes retraining and reemployment. Thus, Mr. Nichols has failed to prove beyond a reasonable doubt that <u>no</u> rational basis for the statutory provision exists. Therefore, we decline to declare § 28-33-18(d) unconstitutional, and we affirm the Appellate Division's decree in this regard.

## IV

## Conclusion

For the reasons set forth in this opinion, the decision and final decree of the Appellate Division are affirmed. The record in this case is remanded to the Workers' Compensation Court with our decision endorsed thereon.



**TITLE OF CASE:**   Robert E. Nichols v. R&D Construction Co., Inc.

**CASE NO:**   No. 2010-336-M.P.
(02-854)
(03-4052)

**COURT:**   Supreme Court

**DATE OPINION FILED:**   March 4, 2013

**JUSTICES:**   Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**   Associate Justice William P. Robinson III

**SOURCE OF APPEAL:**   Workers' Compensation Court

**JUDGE FROM LOWER COURT**:

Associate Judge Janette A. Bertness

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Gregory L. Boyer, Esq.

For Defendant:  Nicholas R. Mancini, Esq.